No. 19,745.

HENRY C. GLISAN v. JACK R. SMOLENSKE, ET AL.

(387 P. [2d] 260)

Decided September 30, 1963.

December 16, 1963, Opinion modified and rehearing denied.

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, for plaintiff in error.

Mr. RICHARD N. GRAHAM, for defendants in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE FRANTZ.

IN the early months of 1957, Henry C. Glisan, who is a builder, was erecting houses in Holly Hills Subdivision in Arapahoe County, and the street on which some of these houses were being built is South Jasmine Place. Mrs. Smolenske, during the first days of March, 1957, had inspected a house then under construction at 2501 South Jasmine Place, had called the real estate agency handling its sale, Armand-Yeske, and had an initial discussion with the agency and Glisan concerning the sale and purchase of the property.

A day or two later Mr. Smolenske, accompanied by his

wife, looked at the premises. Negotiations ensued in which the Smolenskes, Glisan, and the agency participated. On the occasion of one of these meetings at the premises Mr. Smolenske observed that caissons were being constructed for the house next to 2501 South Jasmine Place, and upon inquiry was told by Glisan that due to soil difficulties he had to put in caissons in this property. To allay Mr. Smolenske's expressed concern about 2501 South Jasmine Place, Glisan assured Mr. Smolenske that he had undertaken structural measures to overcome the soil difficulties.

These structural measures were the use of spread footings, and of slightly heavier steel beams in the foundation of the house at 2501 South Jasmine Place than required by the building code. Their nature was unknown to the Smolenskes. It appears that spread footings were used quite extensively in the subdivision.

As a result of the negotiations the Smolenskes entered into an agreement on March 21 to purchase what in that document is described as a "home," and which agreement provided in part:

"Price to include: House as improved, with built-in dishwasher, disposal, range, oven, vent fan and hood, curbing as presently broken to be patched by builder at his cost, electrical outlet for refrigerator, asphalt tile in entry way * * * further inclusions: drawer in kitchen to be repaired, cedar folding door to be installed in recreation room, between utility area, square plywood box around furnace, *house to be completed in workmanlike manner. Possession* to be given upon transfer of title." (Emphasis supplied.)

By the terms of the agreement the Smolenskes were required to pay $26,700.00 for the property. A receipt for $500.00 earnest money was part of the agreement. In addition Glisan was to accept an equity in another home of $4,600.00. A payment of "$1,600.00 additional in cash due upon transfer of title" was called for.

At the time of executing the agreement the house was

still in the course of construction. Nor was the house completed on April 1, 1957, the "closing" date of the transaction. It was admitted that to the date of trial Glisan had failed to place tile in the entry way and to enclose the furnace with plywood. As reason for not using a plywood enclosure Glisan asserted the risk of fire arising from such framework.

It was, therefore, contemplated that the house being built was a "home"; that the builder was "to include" certain items in the home; that the home was "to be completed in workmanlike manner"; and that possession of the home was to be given at the time of transfer of title. These were the material matter of the contract, and these formed the nature of the thing which Glisan, as vendor, was proposing to sell to the Smolenskes, as purchasers. *Jones v. Gatewood,* 381 P. (2d) 158 (Okl. 1963); see *Weck v. A. M. Sunrise Construction Co.,* 36 Ill. App. (2d) 383, 184 N. E. (2d) 728; *Perry v. Sharon Development Co., Ltd.,* 4 All. E.L.R. (1937) 390; *Miller v. Cannon Hill Estates, Ltd.,* (1930) 2 K.B. 113.

It is advantageous at this point to read the findings of the trial court relating to the physical condition of the house. The trial court said this:

"On or about March 21, 1957 the parties entered into a contract for the purchase and sale of a residential property at 2501 South Jasmine Place in Arapahoe County, Colorado with a partially completed dwelling located thereon. Under the contract, the dwelling, which was being constructed by defendant on a lot owned by him, was to be completed by the defendant in a workmanlike manner.

"The plaintiffs took possession of the premises on or about April 1, 1957, at which time the residence was still not completed and the defendant agreed to complete it according to the contract.

"* * * Defendant did not otherwise complete his contract with plaintiffs in that he failed and neglected to

install plywood around the furnace and asphalt tile in the entryway. . . ."

These are findings of fact which are binding upon this court when they are, as here, amply supported by evidence.

The Smolenskes occupied the premises on April 1, 1957, and they have lived there ever since. Shortly after they moved in, cracks started appearing in the surfaces of the house, and as time passed, these cracks enlarged. Doors and windows tilted. Other defects developed. All these imperfections resulted from contraction and expansion of the soil upon which the house rested, depending upon the dryness or dampness of the soil beneath the foundation.

The Smolenskes, after a number of amendments, the last of which was made during the trial, relied for a recovery of damages against Glisan upon (1) a breach of implied warranty of fitness for habitation, (2) tortious failures of Glisan, and (3) fraudulent concealment.

As part of its conclusions of law, the trial court determined that "the buyers were entitled to a house 'completed in workmanlike manner' reasonably suited for the intended purpose of human habitation. . . ." It also determined, pursuant to findings, that Glisan was liable for fraudulent concealment and subject to exemplary damages. The cost of making the house comply with the warranty, to-wit $7,915.15, was adjudged as actual damages, and additionally, the Smolenskes were awarded $750.00 exemplary damages.

Whichever theory is considered—whether implied warranty or fraudulent concealment—the judgment must be reversed, according to Glisan, for want of support in the record; and if either theory is sustainable, then he would have us reverse on the ground that an improper measure of damages was applied.

■ We disagree with the trial court in finding that there was a fraudulent concealment of the soil condition by Glisan. Mr. Smolenske testified that he had observed

caissons being constructed for the house next to the one he was negotiating to purchase, and that in discussing it with Glisan, he was advised about the soil condition by Glisan. This discussion took place before the agreement was effectuated by the parties.

In such situation the soil condition was a patent circumstance to both vendor and purchasers, and makes inapplicable the doctrine of the case of *Cohen v. Vivian,* 141 Colo. 443, 349 P. (2d) 366, upon which the Smolenskes rely. In that case the soil condition was latent to the purchasers and patent to the vendor, requiring disclosure by the latter. See *Morrison v. Goodspeed,* 100 Colo. 470, 68 P. (2d) 458.

Failure of the Smolenskes to establish a case of fraudulent concealment results in the extinguishment of that portion of the judgment awarding exemplary damages.

Was there an implied warranty that the house, when completed, would be fit for habitation? There is a growing body of law on this question which, if followed, requires an answer in the affirmative.

It is the rule that there is an implied warranty where the contract relates to a house which is still in the process of construction, where the vendor's workmen are still on the job, and particularly where completion is not accomplished until the house has arrived at the contemplated condition—namely, finished and fit for habitation. *Weck v. A. M. Sunrise Construction Co.,* supra; *Jones v. Gatewood,* supra; *Hoye v. Century Builders, Inc.,* 52 Wash. (2d) 830, 329 P. (2d) 474; *Miller v. Cannon Hill Estates, Ltd.,* supra; *Perry v. Sharon Development Co., Ltd.,* supra; *Jennings v. Tavenner,* 2 All. E.L.R. (1955) 769; Dunham, "Vendor's Obligation as to Fitness of Land for a Particular Purpose," 37 Minn. L. Rev. 108 (1953). Contra: *Coutraken v. Adams,* 39 Ill. App. (2d) 290, 188 N.E. (2d) 780.

One of the early decisions in this country on the point is that written in the case of *Vanderschrier v. Aaron,* 103 Oh. App. 340, 140 N.E. (2d) 819. In that case the rule

prevailing in England was adopted, and the Court held that an implied warranty of fitness for human habitation existed. We follow the Vanderschrier case.

A statement of the law often cited appears in the leading case of *Miller v. Cannon Hill Estates, Ltd.,* supra: "* * * The position is quite different when you contract with a builder or with the owners of a building estate in the course of development that they shall build a house for you or that you shall buy a house which is then in the course of erection by them. There the whole object, as both parties know, is that there shall be erected a house in which the intended purchaser shall come to live. It is the very nature and essence of the transaction between the parties that he will have a house put up there which is fit for him to come into as a dwelling house. It is plain that in those circumstances there is an implication of law that the house shall be reasonably fit for the purpose for which it is required, that is for human dwelling."

Glisan contends that all prior undertakings became merged in the deed; hence, he says, the agreement for the sale and purchase of the property, if subject to an implied warranty of fitness for habitation, became absorbed in the deed and no longer had any efficacy. With this contention we cannot agree; it represents an inversion of the primacy of the instruments. Considering the relationship of the instruments to each other as revealed by their language, we hold that the delivery of the deed constituted part performance of the agreement. *Weck v. A. M. Sunrise Construction Co.,* supra.

█ If the terms of a sale and purchase agreement are fulfilled by the delivery of the deed, there is a merger; but if the delivery of the deed is only one of a number of things to be performed under the terms of the contract, the delivery of the deed constitutes part performance, and the other matters to be performed remain obligatory. *Weck v. A. M. Sunrise Construction Co.,* supra; *Chicago Title & Trust Co. v. Wabash-Randolph Corp.,*

384 Ill. 78, 51 N.E. (2d) 132; *Christiansen v. Intermountain Ass'n,* 46 Ida. 394, 267 Pac. 1074; *Allen v. Currier Lumber Co.,* 337 Mich. 696, 61 N.W. (2d) 138; *Van Hee v. Rickman,* 109 Ore. 357, 220 Pac. 143.

 Ordinarily the measure of damages recoverable for a breach of warranty is the difference between the actual value of the property at the time of sale and what its value would have been if it had been as warranted. *Peppers v. Metzler,* 71 Colo. 234, 205 Pac. 945. But where the buyer has retained the property and uses it, as here, he may make reasonable expenditures to bring the property into conformity with the warranty, and such expenditures may represent the measure of the buyer's damages—another way of arriving at this difference in value. 77 C.J.S., p. 1328, § 378 (b). The latter application was appropriately used in this case.

The judgment is affirmed except as to the allowance of exemplary damages, and as to such damages the judgment is reversed and the cause remanded with directions to the trial court to vacate that part of the judgment relating to exemplary damages.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.