## No. 21225.

H. B. Bolas Enterprises, Inc., *v.*
William G. Zarlengo, Jr., et al.
(400 P.2d 447)

Decided March 29, 1965.

Martin P. Miller, for plaintiff in error.

No appearance for defendants in error.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

The judgment for damages obtained by Mr. and Mrs. Zarlengo against H. B. Bolas Enterprises, Inc., is the subject of review by this writ of error. A residential property belonging to Intermountain Construction Company had been sold to the Zarlengos by Bolas Enterprises, and the present suit emanated from such sale.

Essentially, the grievance forming the basis of the Zarlengos' claim against several defendants is the loss allegedly sustained by them when the basement walls of the house which they purchased cracked and admitted water.

The Zarlengos filed two claims for monetary relief and a third for rescission. In their first claim, they allege that the defendants (Harold B. Bolas, H. B. Bolas Enterprises, Inc., and Intermountain Construction Co.) had represented that the house was properly constructed, and that they relied "upon written and implied warranties * * * regarding the fitness of the said house for occupancy by them."

They then alleged that the basement walls cracked and permitted large quantities of water to enter, causing damage to the home and to various items stored in the basement. Negligence in several respects is set forth, after which the Zarlengos state that:

"As a result of Defendants' negligence, the Plaintiffs have been put to great inconvenience in the use of their home; have suffered damage to the heating and hot water systems in the house; have suffered damage to many items stored in the basement; have suffered an overall deterioration in the value of the house, and have been deprived of the full and normal use of the premises to which they are entitled, all to Plaintiffs' damage in the sum of $15000.00."

By their second claim. the Zarlengos sought to recover

damages in the sum of $15,000.00 for breach of "expressed and implied warranties" of fitness. Their third claim in rescission was dismissed because confessedly Zarlengos' conduct manifested an affirmance of the contract.

In its pre-trial order, the trial court construed the complaint as stating two claims: one for negligence in the construction of a residence for the plaintiffs, and the other for violation of contract arising from breaches of express and implied warranties of fitness for habitation. In his opening statement to the trial court, counsel for the Zarlengos advised the court that the action involved "different theories: one based on negligence, and the other based on breach of warranties."

At the conclusion of the evidence, the case was taken under advisement, and in due time the trial court made "Findings of Fact, Conclusions of Law, and Judgment." The trial court noted that the Zarlengos' "first cause of action was based upon negligence and the second cause of action was based upon an express and implied" warranty.

The trial court observed that an area of land was subdivided by Bolas and title taken in the name of Bolas Enterprises, and that Bolas set up a sales organization to sell lots and houses which were built on the subdivided property. It found that the particular property was held in the name of Intermountain Construction Company and "that it had been built and sold" by Bolas Enterprises "to some people by the name of William C. Macklin and wife" and subsequently sold by Bolas Enterprises to the Zarlengos.

The trial court noted that the contract of sale to the Zarlengos recited that Bolas Enterprises undertook to construct a residence on the property, that the purchase price would be $13,625.00, and that it contained provisions for financing the purchase of the property. It took note of testimony showing that the builder of the house was Dike and Colegrove, Inc. It found that the Zarlengos

were uninformed as to Intermountain Construction Company and as to Dike and Colegrove, the corporations which respectively owned and built the house; that the Zarlengos "relied solely upon the representations that H. B. Bolas Enterprises, Inc., was the owner of the property, the builder of the house, the warrantor of the construction, and that it received the money from the sale thereof."

The trial court further found that, so far as the Zarlengos were concerned, Bolas Enterprises "was the owner of the property, constructed the house, guaranteed the work, and by their actions endeavored to take care of the faulty construction of the house after it was built." The trial court made specific findings as to items of damage and entered judgment for their totality. It made unnecessary the filing of a motion for new trial.

A reading of the evidence makes it luculent that Bolas contracted to buy the land which subsequently was subdivided, but that shortly thereafter title was taken in the names of four corporations in which Bolas had no interest as stockholder, director, or otherwise. It further appears that the particular property was held in the name of Intermountain Construction Company and that Bolas Enterprises never had title to it, and that in the sale thereof to the Macklins and to the Zarlengos, Bolas Enterprises acted as agent.

There is a recital in the contract for the sale and purchase of the property that Bolas Enterprises owned the lot and that it undertook "to construct a residence thereon." It should be observed, however, that there was a house already on the premises and it was the particular house that the Zarlengos wanted to buy, and this the Zarlengos freely admitted.

Documentary evidence given to the Zarlengos at the time the transaction was consummated shows conclusively that the house was constructed by Dike and Colegrove. Some of this documentary evidence contained a warranty of completion of construction in substantial

conformity with approved plans and specifications and was signed by Dike and Colegrove.

It appears from the evidence that the deed presented to the Zarlengos at the time of closing the sale was signed by the owner, Intermountain Construction Company. Other documentary evidence presented to the Zarlengos at the time of completing the sale referred to Intermountain Construction Company as being the owner which was conveying title to the Zarlengos.

The recital of ownership and intended construction is part of a form contract which the agent for Bolas Enterprises used. Other than this recital, there was nothing in the evidence upon which the Zarlengos could rely indicating ownership in Bolas Enterprises. There is no evidence other than the initial payment which would indicate that Bolas Enterprises received the money from the sale of the property.

The warranty from Dike and Colegrove, already mentioned, and the warranty contained in the deed are the only written warranties in the case. The only testimony bearing on warranty as affecting Bolas Enterprises was an oral statement of its agent made to the Zarlengos that "this house will be warranteed as a new house which will take care of anything that might happen for one year from date of purchase," and that such would be reduced to writing. Although not reduced to writing, the evidence does disclose that Bolas Enterprises once endeavored to seal the cracks under an arrangement it had with Intermountain Construction Company. It should be noted, however, that this oral statement did not warrant the house as one fit for habitation.

The Zarlengos testified that they may have observed but that they failed to attach any significance to the names of the corporations appearing on the several instruments presented to them at the time of the consummation of the transaction. According to them, they believed they were dealing with Bolas Enterprises as the

owner and builder of the structure on the premises. It does appear that they remained in the home nearly seven years, after which they disposed of it and obtained a new one.

 Actionable deception may arise from circumstances and conduct as well as from words. *Cahill v. Readon,* 85 Colo. 9, 273 Pac. 653. But whether circumstances, conduct or words are the means used to deceive, such means must be of a definite and specific character, there being no right to rely on circumstances, conduct or words which are equivocal so that they comport equally with innocence and good faith as with bad motivation. *Connell v. The El Paso Gold M. & M. Co.,* 33 Colo. 30, 78 Pac. 677.

In a light most favorable to the Zarlengos, the circumstances, conduct and words of Bolas Enterprises could be viewed as being entirely consistent with good faith.

Bolas Enterprises could be held liable for negligence in the construction of the house only on the basis that it was the builder or that it had, by reason of circumstances, conduct or words, led the Zarlengos to believe that it had constructed the house. It was not, in fact, the builder of the house and there was no representation made that it was the builder of the house, and the conduct and circumstances of Bolas Enterprises were consonant with the actual fact, i.e., it was not the builder.

█ There was no written or express warranty that the house was fit for habitation, and being a house previously occupied by the Macklins for some time, it was not a new house permitting reliance upon any implied warranty of fitness for habitation. *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399.

█ Where the findings and judgment of the trial court lack support in the evidence, we must reverse. *Thuringer v. Trafton,* 58 Colo. 250, 144 Pac. 866; *Nix v. First National Bank,* 23 Colo. 511, 48 Pac. 522; *La Crosse Gold Mining Co. v. Scudder,* 4 Colo. 44.

The judgment is reversed with directions to dismiss the action.

MR. CHIEF JUSTICE PRINGLE not participating.