**Forrest W. Bolkum and Velma E. Bolkum v. John J. Staab and Cecile D. Staab**

[346 A.2d 210]

No. 196–73

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed October 7, 1975

468

*Richard E. Davis Assoc., Inc.,* Barre, for Plaintiff.

*John A. Burgess Assoc., Ltd.,* Montpelier, for Defendant.

**Larrow, J.** The Washington County (now Superior) Court, after trial by court, entered findings of fact and a judgment order awarding plaintiffs damages for defective construction items in a dwelling house sold them by the defendants. Both parties have appealed.

The defendants claim, in substance, that the implied warranty against structural defects in the sale of a newly constructed house by the builder-vendor, first accepted by the Court as the current concept in *Rothberg* v. *Olenik*, 128 Vt. 295, 262 A.2d 461 (1970), should not apply where the seller is not the builder and does not "control" the builder. They also claim that the trial court erred in using cost of repair as a measure of damage. Plaintiffs claim the damages to be inade-

quate, because a proper item of inspection cost was excluded, and because the judgment entered is at variance with the findings.

In *Rothberg*, the court reviewed at length the case law relating to the ancient doctrine of *caveat emptor* and the modern concept of implied warranty against structural defects, based upon analogy to the long accepted implied warranty of fitness in sales of personal property. It decided that there was no rational doctrinal basis for differentiating between the sale of a newly constructed house by the builder-vender and the sale of any other manufactured product. *Rothberg, supra,* 128 Vt. at 305. Defendants concede the "salutary effect" of the *Rothberg* holding, but claim it loses that effect when applied to them, because they did not construct the house themselves and the court found they exercised "no real control" over the construction done by a builder with whom they contracted.

We are somewhat at a loss to understand what the trial court meant by "real control", a phrase it did not explain. We take it to be equated to actual control, as exercised by master over servant, rather than the general control exercised by an owner over an independent contractor. Whatever may have been intended, it was a not unusual situation presented by the findings. The defendants Staab owned a large tract of land, set out into building lots. Retaining title, they contracted with a builder to build a house on one of the lots, showed it to plaintiffs when it was almost completed, with a check list of items the Staabs agreed to complete. This was done, and the deed passed, after plaintiffs had moved in. The structural defects complained of developed thereafter. Defendants now assert that they should not be encompassed by the *Rothberg* holding because that holding was based on cases involving "general builders", which they are not. They cite no cases upholding this claimed distinction.

We do not here reach the case where an individual builds a house by himself or a contractor for his own use and later decides to sell it. In *Rothberg* we adopted by analogy the implied warranty of merchantability in the sale of goods where "the seller is a merchant with respect to goods of that kind." 9A V.S.A. § 2—314(1). This would, arguably, exclude the casual sale made by a seller not in the business of selling

houses, as it would a sale by one not in the business of selling goods. But the facts presented here are vastly different. Defendants caused the house in question to be built expressly for resale and as part of a development plan. This is the "business" they were in, and it is from the business activity that the implied warranty arises. The sale was commercial in nature, not casual or personal. That the defendants did not personally drive the nails has no effect on the principle involved, any more than it does in the case of chattels. The implied warranty arises from the business of selling, rather than the business of manufacture. *Humber* v. *Morton*, 426 S.W.2d 554 (Tex. 1968); *Smith* v. *Old Warson Development Co.*, 479 S.W.2d 795 (Mo. 1972). Defendants here are not "intermediate sellers" as they claim; they owned the lot, caused the house to be built expressly for sale, and sold it to the plaintiffs. Even if they were "intermediate" it does not automatically follow that they would be immune from liability. *Cf. Digregorio* v. *Champlain Valley Fruit Co.*, 127 Vt. 562, 255 A.2d 183 (1969). The trial court was correct in holding defendants upon their implied warranty.

■■ Defendants claim error by the trial court in using reasonable cost of repairs as a measure of the damage sustained by plaintiffs from the structural defects found. They assert the true measure is the difference in market value between the house as built and as it should have been built. This is, as contended, the general rule of damage for breach of warranty. But the argument overlooks what is probably the usual situation, that of remediable defects, where the cost of such remedy, plus in some instances consequential damages, in fact establishes the difference in market value. The test is absolute where repairs cannot remedy the defects warranted against, as where roosters are delivered in lieu of pullets. *Preston* v. *Montgomery Ward*, 112 Vt. 295, 23 A.2d 534 (1942).

The two rules to which the defendant refers are not necessarily mutually exclusive. Indeed, their application may produce the same result.

If the injury is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensa-

tion. If the damage is permanent and beyond full repair, the variance in value of the property before and after the injury often affords the better guide to a just award. It all depends upon the character of the property and the nature and extent of the injury. (Citations omitted.)

*Bean* v. *Sears Roebuck & Co.*, 129 Vt. 278, 282, 276 A.2d 613 (1971). No claim is here made that the defects in question were not curable by repair or replacement; an examination of the record shows that this is what was in fact done. This being so, the reasonable expense of such remedial action is highly probative of the difference in value between the house as warranted and the house as built. *Berlin Development Corp.* v. *Vermont Structural Steel Corp.*, 127 Vt. 367, 250 A.2d 189 (1968); *Sheldon* v. *Northeast Developers, Inc.*, 127 Vt. 15, 238 A.2d 775 (1968). No error appears in the general use by the trial court of reasonable remedial expense as a measure of recovery.

Plaintiff's claims of error with respect to the amounts of damage awarded, however, have more substance. They claim that the court erred in its mathematical calculations, on its own findings, and that it excluded without cause any compensation to plaintiffs for the reasonable cost of expert inspection and advice, completely aside from expert testimony and trial preparation. Both claims appear to have merit.

These claims are tersely covered in Finding No. 10 of the trial court:

10. The Court further finds that the cost of repairs amounted to $5,562.35 being the estimate submitted by the expert of the defendant. The Court does not find that Mr. Gratiot's bill $1,410.71 should be included as a charge against the defendants.

Without further clarification, judgment was entered in the first amount, plus taxable costs, and without any interest, despite the fact that the liability attached more than six years before judgment.

Defendants do not brief the mathematical inaccuracy of the judgment, and an examination of the record shows an obvious miscalculation. By stipulation, it was agreed that defendants'

expert witness would have testified that plaintiffs' bills were inflated by 10%. Without going into all details, even applying this formula, as the court indicated it desired to do, yields a result almost one thousand dollars more than the judgment. The cause must be remanded for reassessment of damages.

In such reassessment, apart from the reasonable costs of repair to be found by the court, appropriate attention should also be given to the element of delay in recovery. And, specific findings should be made as to the fee paid plaintiffs' professional consultant, retained to identify the structural defects and make recommendations for their remedy. Such matters are quite obviously beyond the knowledge of the average person, and the retaining of an engineer for advice would not seem an unwarranted expense, at least without more than appears from the findings as made. Indeed, under statutory provisions to which we have resorted by analogy in establishing liability for breach of implied warranty, "[i]ncidental damages resulting from the seller's breach include expenses reasonably incurred in inspection. . . ." 9A V.S.A. § 2–715(1). To the extent that such charges are found to be reasonable, and in the absence of any finding that they were not necessarily or reasonably incurred, it would appear that these expert charges not incurred for trial preparation and testimony are a proper item of damage.

*The entry of judgment for the plaintiffs is affirmed except as to damages, and the cause is remanded for hearing on that question, consistent with the views herein expressed, plaintiffs to recover their costs in this Court.*