599 P.2d 269 (1979)
James A. MAZUREK and Carole Mazurek, Plaintiffs-Appellees and Cross-Appellants,
v.
James A. NIELSEN and Janet K. Nielsen, Defendants-Appellants and Cross-Appellees, and
Colorado West Real Estate, Inc., a Colorado Corporation, and Gene Cook, Defendants Third-Party Defendants.
No. 78-050.
Colorado Court of Appeals, Div. I.
April 26, 1979.
As Modified On Denial of Rehearing May 24, 1979.
Certiorari Denied August 27, 1979.
*270 Holland & Hart, R. Alan Poe, R. Brooke Jackson, Denver, for plaintiffs-appellees and cross-appellants.
James C. Vaughters, Denver, for defendants-appellants and cross-appellees.
PIERCE, Judge.
Plaintiffs, James and Carole Mazurek, brought this action for fraud and breach of implied warranties of fitness and habitability against defendants, James and Janet Nielsen, in connection with a home which the Mazureks purchased from the Nielsens. Trial was to a jury which returned a verdict in favor of the Mazureks. There were other defendants, but only the Nielsens appeal. We reverse.
The Nielsens hired an architect, contractors, and subcontractors, and built a mountain home on land which they owned in Routt County. Construction on the home was substantially completed in 1974, and a well was dug and a pump installed on the property by one of the subcontractors. There was evidence indicating that the Nielsens tried to sell the house even before the construction was substantially completed, but these efforts apparently failed. They moved into the house in late 1974.
In May of 1976, after being brought together by their respective real estate brokers, the Mazureks and Nielsens signed a receipt and option contract for the sale of the property. The sale was closed and the Mazureks moved into the house in August. Shortly thereafter, they ran out of water. After making a series of tests, they discovered that the well was incapable of producing enough water for their household use.
The Nielsens argue that the trial court erred in the manner in which it instructed the jury on the implied warranty of habitability. We agree. They consistently maintained throughout the trial and in their briefs and arguments before this court that they were not "in the business of building," and they strenuously objected to the habitability instructions that were given.
In Carpenter v. Donohoe, 154 Colo. 78, 388 P.2d 399 (1964), our Supreme Court adopted the modern view that builder-vendors of new homes impliedly warrant that the homes will be built in a workmanlike manner and will be suitable for habitation, regardless of whether the sale is consummated before or after the completion of construction. Cf. Glisan v. Smolenske, 153 Colo. 274, 387 P.2d 260 (1963). However, this warranty of habitability generally extends only to the immediate purchaser. As some of the cases have expressed it, the warranty applies only to "new" as opposed *271 to "used" homes. H. B. Bolas Enterprises, Inc. v. Zarlengo, 156 Colo. 530, 400 P.2d 447 (1965); Gallegos v. Graff, 32 Colo.App. 213, 508 P.2d 798 (1973). Thus, the warranty runs only against "builder-sellers."
The trial court instructed the jury, over the Nielsens' objections, that a "builder-seller" was any seller who "either built, or participated in the building of, or supervised the building of, the property . . ." This instruction correctly states the rule that a seller need not be involved in the physical acts of construction before the implied warranty of habitability attaches. See Bolkum v. Staab, 133 Vt. 467, 346 A.2d 210 (1975); Klos v. Gockel, 87 Wash.2d 567, 554 P.2d 1349 (1976). Where, as here, a seller employs architects, contractors, and subcontractors for the purpose of causing a house to be built on land which he owns, his activities are indistinguishable from those of a general contractor, and he is a "builder" within the meaning of the rules of implied warranties of habitability. Klos v. Gockel, supra.[1]
However, the status of builder-seller also implies an element of commerciality which the trial court's instructions here failed to include:
"The essence of the implied warranty of suitability or habitability requires that the vendor-builder be a person regularly engaged in building, so that the sale is commercial rather than casual or personal in nature." Klos v. Gockel, supra.

This is not to say that a builder-seller must necessarily have a history of building experience before he can be considered to be "in the business of building." Even a first time builder-seller may be "in the business of building" for purposes of impliedly warranting his work, if his primary reason for constructing the house is to resell it. The intent of the builder-seller in this regard is a factual question. Here, the evidence was conflicting and the matter should be resolved by a jury after being properly instructed. See American National Bank v. Christensen, 28 Colo.App. 501, 476 P.2d 281 (1970).
Because of its likelihood of reappearing at retrial, we will address the Nielsens' contention that any warranty of habitability with respect to the house is limited to the structural integrity of the house, and does not extend to the question of sufficient well water.
Contrary to this contention, our Supreme Court has recognized that the implied warranty of habitability is not limited to the structure of the house itself. See, e. g., Mulhern v. Hederich, 163 Colo. 275, 430 P.2d 469 (1967) (soil conditions). Though no Colorado case has addressed the question of a sufficient water supply in an implied warranty context, the jurisdictions which have faced this question have unanimously held that a sufficient water supply is a prerequisite to the useful occupancy of any house, and is therefore part of the warranty of habitability. See, e. g., (1972); Bosse v. Koehler, 262 Md. 593, 278 A.2d 602 (1971); Ruane v. Cardinal Realty, Inc., 116 N.H. 321, 358 A.2d 412 (1976); Elderkin v. Gaster, 447 Pa. 118, 288 A.2d 771 (1972). We adopt this position. Moreover, the warranty extends to the quality of water as well as to its quantity. See Bosse, supra.
Because of our resolution, we do not address the balance of the Nielsens' allegations of error, nor do we reach the Mazureks' claim, on cross-appeal, for attorney's fees.
The judgment is reversed and the cause remanded for a new trial.
COYTE and KELLY, JJ., concur.
NOTES
[1] We note that the Nielsens' intervening occupancy does not necessarily cut off any such warranty. See Duncan v. Schuster-Graham Homes, Inc., Colo., 578 P.2d 637 (1978).