**Robert S. SLOAT and Beth S. Sloat, Plaintiffs-Appellees,**

**v.**

**C. E. MATHENY and Lola May Matheny, Defendants-Appellants.**

**No. 78–1135.**

Colorado Court of Appeals, Div. II.

Jan. 10, 1980.

Writ of Certiorari Granted April 7, 1980.

Stephen J. Worrell, Greeley, for plaintiffs-appellees.

Houtchens, Houtchens & Daniel, Jerry C. Daniel, Greeley, for defendants-appellants.

PIERCE, Judge.

Defendant C. E. Matheny appeals a judgment holding him liable to plaintiffs for breach of implied warranties of workmanlike construction and habitability arising from the sale of a new home. We reverse.

The underlying facts are not in dispute. In 1976, Matheny was building a house, the subject of this suit, which he planned to occupy with his family. During the course of construction, financial difficulties developed compelling him to sell the unfinished house and it was listed with a real estate agent. Plaintiffs purchased the home, and a short time after the sale was completed, problems developed with the driveway, the redwood deck, the air conditioner, and the television antenna and amplifier system. Plaintiffs commenced this action to recover damages for these defects.

Evidence adduced at trial reveals that express warranties had been requested by plaintiffs, but that Matheny had refused to provide any. The trial court found, however, that plaintiffs had relied on Matheny's expertise as a builder and it concluded that Matheny had impliedly warranted the workmanship and habitability of the house. The court held that Matheny breached these warranties and awarded plaintiffs damages.

In Colorado we have witnessed an erosion of the rule of *caveat emptor,* and the emergence of a new theory of liability in the area of new home construction. Now a "builder-vendor" impliedly warrants to the purchaser of a new home that the home was constructed in a workmanlike manner and is suitable for habitation. *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964); *Glisan v. Smolenske,* 153 Colo. 274, 387 P.2d 260 (1963). The reason for this rule was explained in *Duncan v. Schuster-Graham Homes, Inc.,* Colo., 578 P.2d 637, 638 (1978), as being "to afford home buyers protection from overreaching by comparatively more knowledgable builders-vendors."

The imposition of implied warranties is not restricted to large scale developers; small builders, even first-time builders, may impliedly warrant their product if the "primary reason for constructing the house is to resell it." *Mazurek v. Nielsen,* Colo.App., 599 P.2d 269, 271 (1979) (*cert. denied* August 27, 1979).

Here, the trial court concluded that Matheny was a "builder-vendor" as contemplated by *Carpenter v. Donohoe, supra.* In so concluding, the court stated that whether Matheny was building the house for his personal use or for sale to someone else was immaterial. In light of the holding in *Mazurek,* this was error mandating reversal.

The trial court did not have the benefit of the decision in *Mazurek* at the time of this trial; however, there we held that the builder-vendor status requires an element of commerciality in that the implied warranties of workmanlike construction and habitability emanate only from the purchase of new houses built for the purpose of sale.

The policy reasons for restricting the application of the doctrine of *caveat emptor* in the area of new home sales included a desire to eliminate the " 'unscrupulous, fly-by-night operator and purveyor of shoddy work' " from the home construction business and to make commercial builders responsible for the " 'sloppy work and jerry-building' " often found in high density tract housing. *McDonald v. Mianecki,* 79 N.J.

275, 398 A.2d 1283 (1979). These policy reasons are inapplicable, however, when a home is constructed by the builder for his own use rather than for resale.

Additionally, the implied warranties of workmanship and habitability arise from the nature of the sale; not from the builder's experience or expertise as a builder of homes. *Bolkum v. Staab*, 133 Vt. 467, 346 A.2d 210 (1975). For these implied warranties to attach, the sale must be commercial in nature and not casual or personal. *Klos v. Gockel*, 87 Wash.2d 567, 554 P.2d 1349 (1976).

Here, although Matheny was employed in the building industry and had previously built one other house for his own use, plaintiffs have not challenged his contention that he was building this house for his personal use and sold it only because he encountered financial difficulties. Thus, this was not a commercial sale giving rise to the implied warranties of workmanship and habitability.

The judgment is reversed and the cause is remanded with directions to dismiss the complaint.

SMITH, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting:

Because I perceive no reason to carve out an exception to the doctrine of implied warranties of a builder-vendor, and because I believe that such an exception creates undue difficulties in application of the doctrine, I dissent.

Colorado is recognized as a leader in the development of the implied warranty rule. *Note, The Doctrine of Caveat Emptor as Applied To Both The Leasing & Sale Of Real Property: The Need For Reappraisal & Reform*, 2 Rutgers-Camden L.J. 120 (1970); *Tavares v. Horstman*, 542 P.2d 1275 (Wyo.1975). Until the 1950's one who built and sold a home was protected by the doctrine of *caveat emptor*. This ancient principle gradually eroded in the face of modern realities. In *Newcomb v. Schaeffler*, 131 Colo. 56, 279 P.2d 409 (1955), proceeding on negligence principles, the court in effect placed the duty on a builder to conduct soil tests and held him liable to the purchasers of a new home which sustained damage through being built on unstable soil. In *Cohen v. Vivian*, 141 Colo. 443, 349 P.2d 366 (1960), the court proceeded on a constructive fraud basis and held that a builder has a duty to disclose his knowledge of defects that were latent to the purchaser.

Then, in *Glisan v. Smolenske*, 153 Colo. 274, 387 P.2d 260 (1963), and particularly in *Carpenter v. Donohoe*, 154 Colo. 78, 388 P.2d 399 (1964), the modern doctrine of implied warranties of workmanlike construction and habitability came into full fruition. Following those decisions it was the law in Colorado that a builder impliedly warranted his construction techniques and the habitability of new homes to his purchaser.

That this doctrine is expanding in Colorado, is evidenced by the holding in *Duncan v. Schuster-Graham Homes, Inc.*, Colo., 578 P.2d 637 (1978). There, the builder took a home back from the first purchaser because of alleged defects, made some repairs and sold it again. The second purchaser sued, alleging breach of implied warranties. Relying on *H. B. Bolas Enterprises, Inc. v. Zarlengo*, 156 Colo. 530, 400 P.2d 447 (1965), this court took a restrictive view of the builder-vendor warranty and held that because the house was not new, implied warranties cannot apply. *Duncan v. Schuster-Graham Homes, Inc.*, 39 Colo.App. 92, 563 P.2d 976 (1977). The Supreme Court, however, looking to substance rather than form, reversed, explaining that implied warranties were needed to protect home buyers from "*comparatively* more knowledgeable builder-vendors." (emphasis added)

It is true that some states have refused to imply warranties in the case of builders who construct homes for their own use and then sell the house when they change their minds. *See, e. g., Capra v. Smith*, Ala., 372 So.2d 321 (1978); *Yepsen v. Burgess*, 269 Or. 635, 525 P.2d 1019 (1974); *Elderkin v.*

*Gaster*, 447 Pa. 118, 288 A.2d 771 (1972); *Klos v. Gockel*, 87 Wash.2d 567, 554 P.2d 1349 (1969). However, I do not find persuasive the reasons advanced for restricting the doctrine in those cases or in the recent case of this court, *Mazurek v. Nielsen*, Colo. App., 599 P.2d 269 (1979). Rather, the policies underlying the doctrine call for its application even to those who may well not have intended to sell the home at the start of construction but who indeed do sell it.

In my view there is no harm done by requiring that any builder use good workmanship in constructing a home. No home should be shoddily built. Experience tells us that homes last for generations and are inhabited by several families. If we encourage construction of homes that are initially to be builder occupied to be built with less than good workmanship, then there is no protection accorded to eventual renters or purchasers of the home after it is placed in the stream of commerce.

Finally, the rule the majority adheres to has the effect of removing the protections of implied warranties in just the situation where they are most needed: That of the first-time builder. Such a builder is more apt to construct a defective home than is a more experienced builder. Thus, he, above all, should be held to warrant his product. Regardless of this builder's intention when he constructed the home he did finally place it into the stream of commerce by selling it. As between the purchaser who has no reasonable opportunity to observe defective construction techniques, and the builder who has every chance to see and avoid them, the risk of loss should be placed on the builder. *Cf. Cohen v. Vivian, supra.*

I decry the situation where Colorado, formerly on the crest of the wave of logic that has eroded the ancient doctrine of *caveat emptor* in the home construction field, now, for no good reason retreats and creates one outpost of that doctrine which will only cause confusion and further litigation before its inevitable fall.