Robert S. SLOAT and Beth S. Sloat, Petitioners,

v.

C. E. MATHENY and Lola May Matheny, Respondents.

No. 80SC74.

Supreme Court of Colorado, En Banc.

March 30, 1981.

Stephen J. Worrell, Greeley, for petitioners.

Houtchens, Houtchens & Daniel, Jerry C. Daniel, Greeley, for respondents.

HODGES, Chief Justice.

It is a well established rule in Colorado that a builder-vendor of a new home is liable to the buyer for breach of implied warranties of workmanlike construction and habitability. In *Sloat v. Matheny*, Colo. App., 605 P.2d 71 (1980) the court of appeals carved out an exception to this rule by holding that under the special circumstances of this case the builder-vendor was not liable to the buyer. We granted certiorari and now reverse the judgment of the court of appeals.

Defendant-respondent, C. E. Matheny commenced construction on a new home for his family.[1] He had constructed one other home in the immediate area, and was also employed as a millwright in the construction of farm buildings in Kansas and Wyoming.

In the midst of the construction of this home, Matheny was besieged by financial problems. He and his wife decided to sell the home and listed it with a realtor. The plaintiffs-petitioners, Robert S. Sloat and Beth S. Sloat, became interested in the nearly completed home. A realtor took the Sloats to see the home and they were informed that the home was originally being built by a builder for himself and his family. They also learned that the Mathenys were having serious financial difficulties.

The Sloats contracted to buy the home. They asked for express warranties but Matheny refused to provide any such warranties. The Sloats bought the home in a slightly unfinished condition, but required $1,500 to be placed in escrow to assure the completion of · certain work by Matheny. Shortly after moving into their new home the Sloats discovered several problems. The driveway cracked, the redwood deck became unstable, the air conditioner malfunctioned, and the television and amplifier system did not work properly. Eventually the Sloats commenced this action to recover damages for these defects from the Mathenys.

At trial, the court made a finding from the evidence that Matheny was a builder-vendor and therefore the implied warranties of workmanlike construction and habitability arose with the sale of the home. The trial court also regarded as immaterial the fact that the Mathenys did not originally intend to sell the home. The trial court entered a judgment in favor of the Sloats for their damages.

Mathenys appealed the judgment of the trial court. The court of appeals reversed, holding that the question of whether Matheny originally intended the home for the use of his family was crucial to the case. The court of appeals concluded that in order for the warranties of workmanlike construction and habitability to arise there must be a commercial sale, *i. e.*, the builder-vendor had to have built a new house for

---

1. The petitioners have not challenged this fact.

the purpose of sale. Finding that the Sloats had not contested the Mathenys' allegation that they had originally intended to occupy the home, the majority reversed the decision of the trial court and remanded with directions to dismiss the complaint. We find that the logic of the court of appeals opinion is flawed. *See* Judge Sternberg's dissent in *Sloat v. Matheny, supra.*

■ The first question which we must decide is whether a builder-vendor must have always intended to sell a new home in order for the implied warranties of workmanlike construction and habitability to arise in conjunction with the sale. It is undisputed that Matheny commenced construction of the home with the intention of residing there with his family. It is also undisputed that before the home was completed it was placed on the open market for sale. We conclude that these warranties arise so long as there is a commercial sale of a new home by a builder-vendor.

This state was one of the first to adopt the rule of implied warranties of workmanlike construction and habitability when a builder-vendor sells a new home. *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964). *See also Glisan v. Smolenske,* 153 Colo. 274, 387 P.2d 260 (1963). Numerous other jurisdictions subsequently followed suit. *See generally* 25 A.L.R.3d 383 (1969). This court's decisions have been cited as progenitors of this modern trend. *E. g., Tavares v. Horstman,* 542 P.2d 1275 (Wyo. 1975), Comment, *Liability of the Builder-Vendor Under the Implied Warranty of Habitability—Where Does it End?,* 13 Creighton L.Rev. 593 (1979–80).

■ The rule of implied warranties of workmanlike construction and habitability arose in recognition of the anachronism of the common law rule of caveat emptor. As noted by the Supreme Court of Wyoming, "the rule of caveat emptor . . . was based upon an arms-length transaction between the seller and buyer and contemplated comparable skill and experience, which does not

now exist; they are not in an equal bargaining position and the buyer is forced to rely on the skill and knowledge of the builder." *Tavares v. Horstman, supra. See also Duncan v. Schuster-Graham Homes, Inc.,* 194 Colo. 441, 578 P.2d 637 (1978); *Petersen v. Hubschman Const. Co., Inc.,* 76 Ill.2d 31, 27 Ill.Dec. 746, 389 N.E.2d 1154 (1979); *McDonald v. Mianecki,* 79 N.J. 275, 398 A.2d 1283 (1979); *Yepsen v. Burgess,* 269 Or. 635, 525 P.2d 1019 (1974); *Rutledge v. Dodenhoff,* 254 S.C. 407, 175 S.E.2d 792 (1970). The position of the builder-vendor, as compared to the buyer, dictates that the builder bear the risk that the house is fit for its intended use. *Petersen v. Hubschman Const. Co., Inc., supra; Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972). These implied warranties are also consistent with the expectations of the parties. "Clearly every builder-vendor holds himself out, expressly or impliedly, as having the expertise necessary to construct a livable dwelling. It is equally as obvious that almost every buyer acts upon these representations and expects that the new house he is buying, whether already constructed or not yet built, will be suitable for use as a home. Otherwise there would be no sale." *McDonald v. Mianecki, supra. See also Pollard v. Saxe & Yolles Develop. Co.,* 12 Cal.3d 374, 525 P.2d 88, 115 Cal.Rptr. 648 (1974); *Duncan v. Schuster Graham Homes, Inc., supra; Petersen v. Hubschman Const. Co., Inc., supra.* Another rationale for the rule is to "inhibit the unscrupulous, fly-by-night, or unskilled builder and to discourage much of the sloppy work and jerry building that has become perceptible over the years." *Capra v. Smith,* 372 So.2d 321, 323 (Ala. 1979).

■ In order for the implied warranties of workmanlike construction and habitability to arise, the sale must be commercial in nature. A commercial sale is one where a builder-vendor, *i. e.,* one who is in the "business of building," *see Petersen v. Hubschman Const. Co., Inc., supra; Hartley v. Ballou,* 286 N.C. 51, 209 S.E.2d 776 (1974), sells a new home [2] to a member of the general

---

**2.** The general rule is that these warranties arise only with the sale of a new home to its first

buyers. *Duncan v. Schuster Graham Homes, Inc., supra; H. B. Bolas Enterprises, Inc. v.*

public. *E. g., Yepsen v. Burgess, supra; Klos v. Gockel,* 87 Wash.2d 567, 554 P.2d 1349 (1976).

■ A commercial sale took place in this case. The trial court's finding that Matheny was a builder-vendor is supported by the record. It is undisputed that at some time during the course of construction of the home the Mathenys decided to sell the home and it was listed with a realtor. The home was finished with the intent of selling it to a member of the general public. The home buyers, the Sloats, were aware that Matheny was a builder and that although he had originally intended to reside in the home, his intent had changed and the home was offered for sale on the open market.[3] Our conclusion that the implied warranties of workmanlike construction and habitability arose in this case preserves the integrity of the general rule. The findings and judgment of the trial court were supported by the evidence. To hold otherwise would sanction the casual avoidance of these implied warranties by a builder who could easily feign the construction of a home for personal use and then sell the home on the open market. It also serves to "inhibit the unscrupulous, fly-by-night, or unskilled builder . . . ." *Capra v. Smith, supra.*

■ We next address whether the disclaimer of all express warranties by Matheny served as a valid disclaimer of these implied warranties. We conclude that there was not a valid disclaimer in this case.

The court of appeals has considered the question whether a builder-vendor of a new home may limit the implied warranties of workmanlike construction and habitability. The court of appeals has decided that "these warranties may be limited by an express provision in the contract between the parties. However, such a limitation must be accomplished by clear and unambiguous language." *Belt v. Spencer,* 41

Colo.App. 227, 585 P.2d 922, 925 (1978). *See also Hoagland v. Celebrity Homes, Inc.,* 40 Colo.App. 215, 572 P.2d 493 (1977).

■ Without finally deciding this question we note our agreement with the court of appeals decisions that at a minimum such disclaimers by a builder-vendor must be by clear and unambiguous language. *Petersen v. Hubschman Co., Inc., supra; Griffin v. Wheeler-Leonard & Co., Inc.,* 290 N.C. 185, 225 S.E.2d 557 (1976). Such disclaimers must also be strictly construed against the builder-vendor. *Id. See generally, J. I. Case Threshing Machine Co. v. Tate,* 70 Colo. 67, 197 P. 764 (1921).

In the instant case the Sloats requested express warranties which Matheny refused to provide. The only arguable disclaimer in the final sales contract is a statement that the property is sold "in [its] present condition, ordinary wear and tear excepted . . . ." This does not amount to an express disclaimer of implied warranties.

The judgment of the court of appeals is reversed.

*Zarlengo,* 156 Colo. 530, 400 P.2d 447 (1965); *Carpenter v. Donohoe, supra; Glisan v. Smolenske, supra; Wright v. Creative Corp.,* 30 Colo.App. 575, 498 P.2d 1179 (1972). *See generally* Note, *Builders' Liability for Latent De-*

*fects in Used Homes,* 32 Stan.L.Rev. 607 (1980).

3. Compare the facts of this case with *Klos v. Gockel, supra.*