# Supreme Court of the Navajo Nation

**Romero and Laura Brown, Appellants,**

v.

**Guy Todacheeney, Appellee.**

**Decided September 2, 1992**

## OPINION

Before AUSTIN, Acting Chief Justice, BLUEHOUSE and CADMAN (sitting by designation), Associate Justices.

Daniel Deschinny Sr., Esq., Window Rock, Navajo Nation (Arizona), for the Appellants; and Albert Hale, Esq., Window Rock, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by Austin, Acting Chief Justice.

This appeal results from a dispute over the construction, financing, and sale of a defective home for Plaintiff-Appellee Guy Todacheeney. The district court found the Defendants-Appellants Romero and Laura Brown liable for breach of the implied warranty of habitability. It awarded damages and attorney's fees and declared the mortgage agreement invalid. We affirm the finding of liability, reverse the invalidation of the mortgage agreement, and reverse and remand the award of damages and attorney's fees for further proceedings.

I

In late 1982 and early 1983, Todacheeney and his wife met with Romero and Laura Brown and discussed the purchase and construction of a pre-cut home supplied by Buckallew Homes, Inc., a Utah company. The record reveals that Laura Brown was in training to become a dealer of Buckallew homes at the time of these discussions and the eventual construction of the Todacheeney home. The Browns showed the Todacheeneys brochures, designs of various models, and a videotape about the construction of a pre-cut Buckallew home. The Browns arranged for representatives of Buckallew Homes and the construction firm it worked with, Bob and Gary Homes, Inc., to visit the proposed site. The Todacheeneys agreed to purchase a Buckallew home for $38,000 (the parties disagree over whether this amount was the complete construction cost or excluded the cost of fixtures and site preparation).

Construction on the house began in June 1983. The Todacheeneys moved into

the partially completed building in August, and construction was finished in September 1983. Before and after the construction, Mr. Brown, as "statutory agent" for Buckallew Mortgage, Inc., worked to arrange a mortgage loan for the Todacheeneys which was then transferred to Plaza Mortgage, Inc. in California. During the construction, the Browns hired subcontractors, authorized construction to continue, inspected the work, and paid the subcontractors.

The record indicates that the Browns intended to use Todacheeney's completed house as a model to solicit future sales of pre-cut Buckallew homes in the Navajo Nation. In return, Todacheeney was promised a 20% commission on any sale of the pre-cut homes.

Approximately two years after the house was completed, it began to develop structural defects including cracked walls, vibrating and "bouncy" floors, separation of walls from the ceiling and floor, misaligned doors, and separation of built-in cabinets from the walls. After one attempt to correct the defects, the Browns disclaimed responsibility for the repairs.

On October 19, 1987, Todacheeney filed a complaint with the Window Rock District Court against Romero and Laura Brown and their company Dineh Bighan Construction. The complaint alleged breach of implied warranty of habitability or workmanlike performance, negligent construction, breach of express warranty, misrepresentation, and fraudulent concealment. A bench trial was held on February 21-23, 1990. On July 2, 1991, the district court dismissed Dine Bighan as a defendant, ruled for Todacheeney on the claims of breach of implied warranty and negligent construction against Romero and Laura Brown, ruled for Todacheeney on the claim of misrepresentation against Romero Brown, and denied the claims of breach of express warranty and fraudulent concealment. The court awarded Todacheeney damages of $35,500 and attorney's fees of $6,000. In its findings of fact and conclusions of law the court declared the mortgage agreement invalid and unenforceable.

The Browns filed an appeal assigning errors essentially to the district court's finding that they were a builder-vendor and the amount of damages. The threshold issue in this appeal is whether Romero and Laura Brown were responsible for an implied warranty of habitability on Todacheeney's newly constructed pre-cut home.

## II

Housing shortage is a severe problem on the Navajo Nation. A majority of the reservation homes are inadequate and most likely would not meet the minimum building standards set by any state's law. While the federal government funds some housing construction projects on the reservation, the entity actually needed to attack the problem, the private real estate market, is virtually nonexistent. That void perhaps underlies the Navajo Nation's lack of interest in enacting a building code, mortgage laws, and other laws that regulate the housing construc-

tion industry. Thus, the principles set forth below by this Court may be the first spark in the darkness.

The Anglo-American courts created the implied warranty of habitability as an exception to the traditional rule "let the buyer beware" which denied the existence of implied warranties to purchasers of real property. 77 Am. Jur. 2d *Vendor and Purchaser* §§ 329, 335 (1975). The courts have held that a builder-vendor of a new home is liable to the purchaser for failure to provide a completed house which is fit for human habitation and constructed in a workmanlike manner in accordance with industry standards. 13 Am. Jur. 2d *Building and Construction Contracts* § 27 (1964); *Mazurek v. Nielsen*, 599 P.2d 269, 270 (Colo. App. 1979) citing *Carpenter v. Donohoe*, 388 P.2d 399, 400 (Colo. 1964). Among the rationale for this rule has been that builders-vendors hold themselves out as experts in construction while a buyer is forced to rely on their skill and expertise. Because an ordinary purchaser lacks both the knowledge and resources to discover hidden flaws and defects in construction, he or she is at the mercy of the builder-vendor. 77 Am. Jur. 2d *Vendor and Purchaser* § 335, n. 30 citing *Rutledge v. Dodenhoff*, 175 S.E.2d 792 (S. C. 1970).

The Navajo Nation courts are not required to apply Anglo-American state law. 7 N.T.C. § 204. When we choose to adopt a particular Anglo-American legal principle for the Navajo Nation, we look to the underlying basis for the principle and apply it in a manner consistent with Navajo common law and our way of life. Our tribal officials persistently speak of the need for more and adequate housing for the Navajo People, yet they have not proposed laws that would regulate any aspect of the real estate industry. The task is thus on this Court to enunciate principles that will guide the relationship of the parties in their quest to build adequate homes for our people. We choose to make the doctrine of implied warranty of habitability, and its rationale, our law. It is simply an expression of the Navajo cultural view that a hogan must be complete and fit for habitation before it is blessed. The doctrine is well known in the construction trade and it will protect the Navajo People as new homes are constructed for them.

Now we turn to the questions posed by this case. The Browns argue that the warranty of habitability results from the contractual relationship between the parties. Appellant's Brief, p.14 citing *Au v. Au*, 626 P.2d 173, 180 (Haw. 1981). Apparently, the Browns deny they entered into a contract to build Todacheeney's house. Although the district court did not explicitly find the existence of a contract, its finding that the Browns acted as contractors for the construction of the house was sufficient to justify the implication of a warranty of habitability to Todacheeney. In other words, the court implied a contract after reviewing the actions of the Browns. The facts bear this out.

Even before construction began, the Browns held themselves out as a builder-vendor of pre-cut homes. They actively "advertised" and solicited buyers for the homes and after the Todacheeneys agreed to purchase one, they supervised the order and the payments. The Browns secured a mortgage, solicited price quota-

tions from subcontractors, hired subcontractors, authorized construction to continue, inspected the work, and paid subcontractors. Although they testified that they did not keep any of the money paid for the home, Todacheeney's testimony that they promised him a 20% commission on future sales of the homes strongly suggests that they saw the construction of a model home as sufficient compensation for their time and effort in building Todacheeney's home.

It is highly unlikely that Todacheeney, who had accumulated fairly substantial resources, even though elderly and formally uneducated, would have given up almost all control and supervision over the construction process to Mr. Brown unless he believed he could rely on Brown's skill and expertise in completing his home. Mr. Brown did nothing to discourage Todacheeney from this opinion. Instead, he encouraged it. *See Robertson Lumber Co. v. Stephen Farmers Co-op Elevator Co.*, 143 N.W.2d 622 (Minn. 1966) (implied warranty applies where contractor holds himself out expressly or by implication as competent to undertake contract, owner has no particular expertise in work, and owner indicates his reliance on the experience and skill of the contractor).

Much of Laura Brown's defense rests on her lack of memory about, knowledge of, and involvement with the sale and construction of Todacheeney's house. The record strongly implies that Romero Brown was running the commercial business and that Laura Brown's involvement was primarily a means of circumventing conflict of interest difficulties caused by his employment by the Navajo Nation Government. Now that her involvement is not as convenient, she cannot be allowed to use that limited involvement as a shield against those harmed by her business' errors. Likewise, the Browns' argument that Romero Brown was following Morman and Navajo custom, acting not as a builder-contractor but as a personal friend and agent, is unconvincing. All evidence supports the fact that Romero Brown was acting as a businessman. Mr. Brown's involvement in the construction process is far more understandable when consideration is given to the benefit his wife's company was to receive from the construction of a well-publicized model home. We agree there was a contract between the parties.

The Browns argue that the warranty of habitability is limited to commercial builders and that having never built a house before they did not qualify as such during the construction of Todacheeney's home. This limitation, however, was intended to distinguish commercial builders from private individuals who were building for their own personal use. The critical factor is the builder's intent. *Klos v. Gockel*, 554 P.2d 1349, 1352 (Wash. 1976); *Mazurek v. Nielsen*, 599 P.2d at 271 (even a first time builder-seller may impliedly warrant work if resale is the primary reason for building the house). Because the Browns never intended to occupy Todacheeney's house, they do not qualify for this exception. Indeed, the Browns later initiated sales agreements for at least five other pre-cut homes, strongly suggesting that Todacheeney's home was simply the first step in their commercial venture.

The Browns also argue that the warranty of habitability is limited to defects

so serious as to preclude occupation of the dwelling. This is another instance where Navajo courts must adopt Anglo-American law carefully. Capital and adequate housing are both in short supply on the Navajo Nation. Navajos, particularly elderly Navajos, are frequently forced to live in substandard houses. To use that reality to deny compensation for a shoddily constructed house would be manifestly unjust. When a builder constructs a house he warrants to the purchaser that the dwelling is free from major structural defects and fit for human habitation. *Carpenter v. Donohoe*, 388 P.2d 399. The evidence is clear that Todacheeney's house is not structurally sound. The fact that he has had to continue to live there does not reduce the seriousness of its defects.

Throughout this lawsuit, the Browns have blamed subcontractors who performed actual construction work for the defects in Todacheeney's home. The warranty of habitability, however, is a promise from the builder-vendor to the purchaser that the house is sound, not that the builder-vendor did his or her particular construction work correctly. As builder-vendor the Browns were responsible for proper construction, including work done by subcontractors. Had the Browns' attorney chosen, he could have brought the subcontractors into this lawsuit to apportion blame. Yet the Browns never joined any of the subcontractors, nor the suppliers of the pre-cut home, as third party defendants.

The record indicates that the Browns were related in some form to all those involved in the home's construction. The Arizona distributor for Buckallew Homes, Gary Elton, of Bob and Gary Homes, Inc., first approached Laura Brown about selling the homes on the Navajo Nation. He knew her because he had served as foster father for two of her brothers in the Morman church's home placement program in Utah. After the Todacheeneys agreed to purchase a home, the Browns arranged a visit from Elton and Ron Buckallew, the owners of Buckallew Homes. Romero Brown then arranged for various sub-contractors to work on the project, including those they claim are responsible for the damage. This Court does not understand the Browns' failure to join the others involved in the construction or even to call them as witnesses at trial. Because they raised the issue as a defense, it was their responsibility, not Todacheeney's, to join the other parties. Defendants to a lawsuit cannot benefit by blaming third parties if they fail to even attempt to bring those parties before the court.

## III

This Court established the standard for determining and justifying damage awards in *Wilson v. Begay*: "[C]ourts may not simply pick a figure for damages that seems fair, without some indication of how that figure was calculated. Courts must carefully scrutinize claims for damages even after the defendant's liability has been proven, and the record must contain a reasonable justification for the amount of damages awarded." 6 Nav. R. 1, 7 (1988). In issuing its judgment, the trial court must document the facts and law it relies upon with sufficient specifici-

ty to allow the parties to understand the basis for the decision and the appellate court to determine if the facts and law adequately support it. *See Help v. Silvers*, 4 Nav. R. 46 (1983). In the case before us, the district court did not explain the method it used to calculate damages or the legal justification for choosing that method. Moreover, the district court's findings of fact and conclusions of law did not adequately support its award of damages to Todacheeney. Accordingly, the district court's judgment should be reversed and remanded for further proceedings to determine the appropriate amount of damages to be awarded.

Breach of an ordinary contract entitles the injured party to receive the value of what he or she would have received had the breach not occurred. *Hall v. Arthur*, 3 Nav. R. 35, 38 (1980). Thus, when a builder-vendor of a new house breaches the warranty of habitability, the proper measure of damages is the amount necessary to provide the purchaser with what he or she paid for, namely a structurally sound home constructed in a workmanlike manner according to industry standards. This amount is usually the cost of repairs needed to correct the defects. 13 Am. Jur. 2d *Building and Construction Contracts* § 79.

If repairs are not practical or would involve unreasonable economic waste, damages should be the difference between the value of the home as it was built and the amount of the original purchase price. *Montgomery v. Karavas*, 114 P.2d 776, 781 (N.M. 1941). A house which is completely uninhabitable has little value and may carry with it the cost of removing it from the property. In that case, providing the party with what he or she paid for would require awarding damages for the original purchase price plus the cost of preparing the site to begin construction of a new house. Damages are not allowed, of course, if they require resort to speculation or conjecture. *Hall v. Arthur*, 3 Nav. R. at 39.

Upon remand, the district court should inquire into the cost and feasibility of repairs. Damages should be awarded for the cost of the repairs, or the amount Todacheeney paid to build the house plus the cost to remove the structure from his homesite, whichever is less. If this procedure is followed, Todacheeney will receive either what he paid for, a structurally sound house, or the money necessary to clear his lot and purchase one from someone else.

## IV

In its Findings of Fact and Conclusions of Law, the district court declared the mortgage agreement between Guy Todacheeney and Plaza Mortgage Company "invalid." Generally, this Court does not address issues not raised by the parties to an appeal. In this case, however, considerations of policy and justice strongly favor that we raise the issue on our own.

First, voiding a mortgage agreement for over $35,000 without allowing the creditor an opportunity to be heard would reflect badly on the Navajo Nation courts' administration of justice. Moreover, as Todacheeney's own experience demonstrated, lenders are already reluctant to lend money to residents of the

Navajo Nation. Canceling contracts without adequate adjudication will further discourage lenders from providing the capital our citizens want and need.

Second, as a matter of simple justice and equity, a court should not void a mortgage agreement valid on its face without further inquiry into the circumstances surrounding its negotiation and execution. "It is broadly stated that every person is entitled to an opportunity to be heard in a court of law upon a question involving his or her rights or interests before he or she is affected by any judicial decision on the question...." 59 Am. Jur. 2d *Parties* §1 (1971). If the district court's decision is enforced, the mortgage company will have had its interests severely affected without the opportunity to be heard in the court making the order. Such a result would be against the Navajo common law principle that all people affected by a dispute should have an opportunity to speak.

Third, Todacheeney never asked the court to invalidate the mortgage agreement. Rather, he requested the rescission of the purchase agreement and the return of all the money he expended on the house, including the amount he borrowed from the mortgage company and the interest incurred on the loan. Presumably, Todacheeney would then use the award to satisfy his obligation to the mortgage company. Such a result would not affect the mortgage company's interest and would not require them to be joined as a party to this litigation.

It is well established that Navajo courts have jurisdiction over companies engaged in business on the Navajo Nation and have the power to bring such companies before them. 7 N.T.C. § 253; *Thompson v. Lovelady's Frontier Ford*, 1 Nav. R. 282 (1978). With that power and authority comes the obligation to exercise it responsibly. In this case, that obligation requires reversing the district court's invalidation of the mortgage agreement.

## V

The Navajo Nation follows the rule that parties to a dispute must bear their own legal costs in the absence of a statute or special circumstances justifying an award of attorney's fees. *Hall v. Arthur*, 3 Nav. R. at 41. This Court has found special circumstances justifying such an award when a contract provided for it, in contempt proceedings, in the dissolution of a marriage, and for failure to comply with discovery rules and orders. *Id.*; *Morgan v. Morgan*, 5 Nav. R. 64, 65 (1985); *Chavez v. Tome*, 5 Nav. R. 183, 189-190 (1987). In addition, a court may award attorney's fees if a pleading or document is not submitted in good faith, contains material misstatements of fact or law, or is not made upon adequate investigation or research. *John v. Herrick*, 5 Nav. R. 129, 131 (1987) citing *Judicial Conference Resolution* (1982).

In order to receive an award of attorney's fees, a party must prove that his or her case falls within an exception to the Navajo Nation's general rule. While the courts have authority to decide that a particular case merits the creation of a further exception, they must exercise that authority with restraint. *Id.* at 132.

Exceptions to this rule are best created by the Navajo Nation Council. *Hall v. Arthur*, 3 Nav. R. at 41. In this instance, Todacheeney never provided any evidence that his case fell within an existing exception nor any argument that it justified the creation of an additional one. Likewise, the district court's opinion did not include any findings of fact or conclusions of law to justify its award of fees as within an existing exception or justified by a new one. If a court finds special circumstances justifying the award of attorney's fees, it must explain what those circumstances are. The award of attorney's fees to Todacheeney should be reversed and the case remanded for specific findings to determine if the circumstances merit such an award.

## VI

The district court's judgment holding the Browns liable for breach of implied warranty of habitability and workmanlike construction and for negligent construction is affirmed. The award of $35,500 damages is reversed and remanded for further proceedings to determine the proper amount of the award. The award of attorney's fees and costs are reversed and remanded for further proceedings to determine if special circumstances exist to justify an award of those fees. The invalidation of the mortgage agreement is reversed.