## No. C-1216

### James J. Duncan and Hannah F. Duncan
### v. Schuster-Graham Homes, Inc.

(578 P.2d 637)

Decided January 9, 1978.                    Rehearing denied May 30, 1978.

Mason & Davis, Robert J. Mason, for petitioners.

David C. Mize, for respondent and third-party petitioner-cross-petitioner.

Cole, Hecox, Tolley, Edwards & Keene, P.C., Lawrence A. Hecox, for third-party respondents.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The petitioners, James and Hannah Duncan, brought this action against the respondent, Schuster-Graham Homes, seeking damages claimed to have been incurred as a result of Schuster-Graham's alleged breach of an implied warranty of habitability. The trial court denied that claim and court of appeals affirmed. *Duncan v. Schuster-Graham,* 39 Colo. App. 92, 563 P.2d 976 (1977). Certiorari was granted. We reverse and remand for further proceedings.

Schuster-Graham built the house in question in 1968, and sold it as a new house to one Pease later that year. After Pease complained of various defects in the house, Schuster-Graham repurchased it from him in 1969. Having apparently concluded that a drainage problem had caused the defects which led to Pease's complaints, Schuster-Graham, in an attempt to correct the drainage problem, installed a sub-terrain drain.

In 1969, after being advised that the home had been occupied previously and had been reacquired by Schuster-Graham to make repairs, the Duncans purchased the house from Schuster-Graham. Shortly after the Duncans assumed occupancy, various defects began to appear in the house. These included, among other problems, cracks in the basement floor and some walls, separation of certain walls from floors and ceilings, and separation of the fireplace and chimney from walls. Schuster-Graham's representatives made some minor repairs, and promised that the problems would all be remedied, but the more serious defects were never corrected.

Finally, in October, 1974, the Duncans filed the present action, seeking both compensatory and punitive damages based on alleged misrepresentation as well as breaches of express and implied warranties. Schuster-Graham sought indemnity by joining the third-party respondents, R. Keith Hook & Associates, alleging that that firm had performed an inaccurate soil analysis upon which Schuster-Graham had relied.

Schuster-Graham moved for summary judgment, contending that the Duncans' claims were barred by the statute of limitations, section 13-80-127, C.R.S. 1973. Hook & Associates also asserted that defense against Schuster-Graham. The trial court ruled that the Duncans' action was timely, but that Schuster-Graham's third-party claim was barred.

At trial, the Duncans proceeded against Schuster-Graham solely on the implied warranty of habitability theory. After the Duncans' presentation of evidence, the trial court ruled that the implied warranty of habitability applied only to new housing in Colorado, and therefore the Duncans could not recover on that theory. The court of appeals affirmed on that ground and held that it was unnecessary to decide whether the suit was barred by the statute of limitations.

### I. *Implied Warranty of Habitability.*

In Colorado a builder-vendor is obligated to a purchaser of a new home under an implied warranty of habitability. *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964). While the benefit of this implied warranty generally has been limited to purchasers of new homes, the underlying rationale of *Carpenter v. Donohoe,* leads us to conclude that a home buyer in the special circumstances presented here should not be denied the same protection. *See City of Philadelphia v. Page,* 363 F. Supp. 148 (E.D. Pa. 1973); *Casavant v. Campopiano,* 114 R.I. 24, 327 A.2d 831 .(1974). We emphasize that this extension of the implied

warranty of habitability applies only to situations presenting facts closely akin to those presented in this case. *Cf. H.B. Bolas Enterprises, Inc. v. Zarlengo,* 156 Colo. 530, 400 P.2d 447 (1965).

The thrust of *Carpenter v. Donohoe, supra,* was to afford home buyers protection from overreaching by comparatively more knowledgeable builder-vendors. An experienced builder who has erected and sold many houses is in a far better position to determine the structural condition of a house than most buyers. Even if a buyer is sufficiently knowledgeable to evaluate a home's condition, he rarely has access to make any inspection of the underlying structural work, as distinguished from the merely cosmetic features.

In this case Schuster-Graham, as both the builder and the reconditioner prior to the sale to the Duncans, was clearly in a position of superior knowledge. Although the Duncans were informed that the house had been previously sold and repurchased by Schuster-Graham, they were in no position to investigate for themselves the truth or falsity of Schuster-Graham's representations that the defects had been remedied. Thus, for purposes of an implied warranty of habitability, the parties occupied the same respective positions as the builder-vendor and the purchaser of a new house.[1]

The compelling public policies underlying the implied warranty doctrine should not be frustrated solely because of a brief intervening ownership such as that which occurred here. In these circumstances the implied warranty of habitability should survive. Absent some proof that the intervening purchaser caused the defects, his abortive purchase is irrelevant.

## II. *Statute of Limitations.*

In its cross-petition, Schuster-Graham challenges the trial court's holding that the Duncans' claim was not barred by the statute of limitations. We affirm that ruling, but for a different reason than that stated by the trial court.

The parties and the trial court have assumed that the applicable statute of limitations is section 13-80-127, C.R.S. 1973, which provides in pertinent part as follows:

"*Limitation of actions against architects, contractors, engineers, and inspectors.* (1) All actions against any architect, contractor, engineer, or inspector brought to recover damages *for injury to person or property* caused by the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more that ten years

---

[1] No one has suggested that any defects were attributable, even in part, to the intervening owner, Pease. *See Casavant v. Campopiano, supra.*

after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

"(2) In case such *injury to person or property* occurs during the tenth year after substantial completion of the improvement to real property, said action shall be brought within one year after the date upon which said injury occurred . . . .
* * * *

"(4) The limitations provided by this section shall not be asserted as a defense by any person in actual possession or control as owner, tenant, or otherwise of such an improvement *at the time any deficiency in such an improvement constituted the proximate cause of the injury* for which it is proposed to bring an action." (Emphasis added.)

The trial court held that subsection (4) applied in this case to preclude enforcing the two-year limitation period set out in subsection (1). However, careful analysis of the entire provision leads us to conclude that, because of the nature of the Duncans' claim, this special statute of limitations does not apply at all.

The plain language of section 13-80-127 indicates that the General Assembly intended to limit only claims for personal injury or damage to property *other than the defective improvement itself.* Subsections (1) and (2) refer to actions brought to recover damages "for injury to person or property" caused by deficiencies in "design, planning, supervision, inspection, construction or observation of construction . . . ."

■ Subsection (4) excepts from the statute's protection those parties who are in possession or control of real property improvement at the time *such a deficiency proximately causes the injury* sued upon. It is apparent that a suit based upon a deficiency in the improvement is not barred by the limitation of subsection (1). The traditional tort terminology of "injury to person or property" indicates a distinction between actions seeking damages for personal injury or property damage, in the familiar tort context, and actions seeking damages for the structural *deficiencies* as presented here. For example, if a roof were to collapse, injuring a homeowner and smashing his car's windshield, the owner would have claims for both his personal injury and the damage to his car. Both claims would be within the contemplated coverage of section 13-80-127. Both would be tort claims. In addition the homeowner would have a separate claim for the cost of repairing the defective roof; but this latter claim, being in the nature of a contract claim arising out of the sale of the house, would not be covered by this special statute of limitations.[2]

---

[2] The Uniform Commercial Code, although not applicable to this case, provides an analogous example of this distinction in language similar to that used in section 13-80-127. Under that Code a buyer's damages for breach of warranty in a sale of goods case may relate either to deficiencies in the goods or to injuries caused by those deficiencies. The buyer may recover the difference between the value of the goods accepted and the value they would have had if they had been as warranted (section 4-2-714, C.R.S. 1973). In addition, as separate damages, he may recover for "injury to person or property proximately resulting from any breach of warranty." Section 4-2-715, C.R.S. 1973.

■ Section 13-80-127 explicitly refers only to the latter type of action, that for "injury to person or property." This special statute of limitations, by substituting a two-year bar for the normal six-year statute of limitations governing tort actions,[3] severely restricts the usual time for filing claims against a designated class of defendants, depriving a designated class of plaintiffs of common law tort remedies otherwise available to them.[4] We decline to extend this special bar beyond the breadth plainly intended by the General Assembly.[5] Therefore, we hold that this special statute of limitations does not apply to claims for damages for deficiencies in a structure itself, *i.e.*, where the plaintiff seeks only to receive what the builder promised to deliver, or damages to compensate him for deficiencies in the final product. An action of that kind arises from the contract of sale between the parties, and is basically contractual in nature. *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964). Therefore it is covered by the general six-year statute of limitations. Section 13-80-110, C.R.S. 1973. *See F & S Construction Co. v. Berube,* 322 F.2d 782 (10th Cir. 1963). *Cf. Greene v. Green Acres Construction Co.,* 36 Colo. App. 439, 543 P.2d 108 (1975).

---

[3] Section 13-80-110, C.R.S. 1973.

[4] We do not express an opinion on the constitutionality of the statute, because the issue has not been raised. *Compare Fujioka v. Kam,* 514 P.2d 568 (Hawaii 1973); *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967); *Loyal Order of Moose, Lodge 1785 v. Cavaness,* 563 P.2d 143 (Okla. 1977); *Kallas Millwork Corporation v. Square D. Co.,* 66 Wis.2d 382, 225 N.W.2d 454 (1975) *with Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970); *Regents of Univ. of Calif. v. Hartford Accident & Indemnity Co.,* 59 Cal.App.3d 675, 131 Cal. Rptr. 112 (1976); *Reeves v. Ille Electric Co.,* 551 P.2d 647 (Mont. 1976); *Good v. Christensen,* 527 P.2d 223 (Utah 1974); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972).

[5] This interpretation of the statute is supported by reference to similar provisions in other states, some of which specifically refer to *both* types of action. *See, e.g., Nev. Rev. Stat.,* section 11.205:

"*Actions for damages for injury to person or property or wrongful death caused by deficiency in design, planning, supervision or construction or construction of improvements to real property.*

"1. No action in tort, contract, or otherwise shall be commenced against any person performing or furnishing the design, planning, supervision or observation of construction, or the construction, of an improvement to real property more than 6 years after the substantial completion of such an improvement, for the recovery of damages for:

"(a) Any deficiency in the design, planning, supervision or observation of construction or construction of such an improvement; or

"(b) Injury to real or personal property caused by any such deficiency; or

"(c) Injury to or wrongful death of a person caused by any such deficiency."

*See also Ind. Stat. Ann.,* section 34-4-20-1, *et seq.; Ky. Rev. Stat.,* section 413.135; *N.J. Stat. Ann.,* section 2A: 14-1.1. Obviously, the Colorado General Assembly could have included similar provisions, but did not.

■ In the instant case, the Duncans' claims have focused upon damages relating to deficiencies in the house itself. *I.e.,* they have sought the cost of repairing the deficiencies or the difference between the value of the house they actually received and the value the house would have had if it had been as warranted. *See Carpenter v. Donohoe, supra; Shiffers v. Cunningham Shepherd Builders Co.,* 28 Colo. App. 29, 470 P.2d 593 (1970); *Summit Construction Co. v. Yeager Garden Acres, Inc.,* 28 Colo. App. 110, 470 P.2d 870 (1970). They apparently do not seek damages for injuries to person or property caused by those deficiencies. *Cf., e.g., Schipper v. Levitt & Sons, Inc.,* 44 N.J. 70, 207 A.2d 314 (1965).[6] Given the nature of these claims, the Duncans timely filed their action within six years from the time it accrued; they were not barred by the special two-year statute.

### III. *Indemnity Claim.*

Finally, Schuster-Graham asserts that the trial court erroneously dismissed its indemnity claim against Hook & Associates, the third-party respondents. The trial court held that section 13-80-127(1), *supra,* applied to Schuster-Graham's claim, and that the statute began to run when Schuster-Graham first became aware of defects in the subject property — *i.e.,* in 1969, when it repurchased the house from the initial owner. Schuster-Graham contends that the statute could not begin to run against it until the Duncans filed suit, at the earliest, because only at that point could it have known that an indemnification action would be necessary.

■ We have not previously addressed this specific question. *Cf. Doyle v. Linn,* 37 Colo. App. 214, 547 P.2d 257 (1976); *Williams v. Carr,* 4 Colo. App. 363, 36 P. 644 (1894). The virtually universal rule is that a claim for indemnity does not accrue, and therefore the limitations period does not begin to run, until the indemnitee's liability is fixed — *i.e.,* when he pays the underlying claim, or a judgment on it. *See* Annot., 57 A.L.R.3d 867 (1974), and cases cited therein. We adopt this general rule as the law of Colorado. Since an indemnity action is separate and distinct from the injured person's claim for relief, it remains inchoate until judgment becomes final or the claim is settled. Only then can the indemnitee be said to have a claim for relief, and therefore, it is at that point that the statute of limitations begins to run.

In conclusion, the trial court erroneously dismissed both the Duncans' and Schuster-Graham's respective claims for relief. Accordingly, the judgment of the court of appeals is reversed, and the cause remanded for further proceedings consistent with this opinion.

---

[6] We must emphasize that not all actions brought under an implied warranty of habitability theory will necessarily be excluded from the limitations provided by section 13-80-127. That theory encompasses both the contract and tort-type damages discussed herein, so the applicable statute of limitations must be determined by reference to the nature of the claim in each individual case.