SHARP BROS. CONTRACTING COMPANY and Sanders Company, Inc., a joint venture, Plaintiffs–Appellants,

v.

WESTVACO CORPORATION, American Steel and Iron Works, Inc., American Painting and Sandblasting, Inc., and Carboline Company, Inc., Defendants–Appellees.

No. 89CA1969.

Colorado Court of Appeals, Div. IV.

March 14, 1991.

Rehearing Denied May 2, 1991.

Certiorari Denied Sept. 16, 1991.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B)

Dickinson, Everstine, Kelly & Prud'Homme, Michelle Prud'Homme, Denver, and Niewald, Waldeck, Norris & Brown, Kevin Glynn, Kansas City, Mo., for plaintiffs-appellants.

Calkins, Kramer, Grimshaw & Harring, Edward J. Blieszner, Denver, and Seigfreid, Bingham, Levy, Selzer & Gee, P.C., Paul G. Schepers and Duane J. Fox, Kansas City, Mo., for defendant-appellee Westvaco Corp.

Hall & Evans and Paul R. Franke, III, Denver, for defendant-appellee American Steel and Iron Works, Inc.

Wood, Ris & Hames, P.C., Colin C. Campbell, Denver, for American Painting and Sandblasting, Inc.

Holme, Roberts & Owen, David Steefel, Jeffrey Chase, Denver, and Popkin & Stern, Michael H. Wetmore and Daniel L. Goldberg, St. Louis, Mo., for defendant-appellee Carboline, Inc.

Opinion by Judge MARQUEZ.

Plaintiffs, Sharp Bros. Contracting Co. and Sanders Company, Inc., a joint venture, appeal from a judgment of the trial court dismissing all but one claim against defendant Westvaco Corporation, and all claims against defendants American Steel and Iron Works, Inc., and American Painting and Sandblasting, Inc. We affirm in part, reverse in part, and remand for further proceedings.

In late 1980, plaintiffs' joint venture entered an agreement, as the general contractor, with the Denver Board of Water Commissioners, to construct a potable water reuse demonstration plant. In February 1981, plaintiffs entered into a subcontract with Westvaco Corporation to furnish and install a carbon regeneration system in a portion of the demonstration plant.

Westvaco subsequently subcontracted with American Steel for the construction and installation of two carbon storage tanks. Thereafter, American Steel entered into an agreement with Carboline Company, Inc., to supply a product to be used as a liner to the interior of the carbon storage tanks.

Some time thereafter, the Board of Water Commissioners rejected the application of Carboline's product and required that the liner be removed and reapplied. The removal and reapplication of the linings was subcontracted to American Painting.

On March 21, 1983, an explosion and fire occurred at one of the carbon storage tanks where the tank lining was being removed with a highly flammable substance. The record reflects that this fire caused damage to the tank and surrounding areas of the demonstration plant.

On March 15, 1984, plaintiffs sued Westvaco in the United States District Court for the Western District of Missouri for damages they suffered as a result of the March 1983 fire. The case was transferred to the United States District Court of Colorado. Plaintiffs added claims against American Steel, American Painting, and Carboline in September 1986. However, all claims were subsequently dismissed, without prejudice, on June 10, 1987, because of the lack of subject matter jurisdiction.

On July 20, 1987, plaintiffs refiled their complaint in the United States District Court for the District of Colorado against Westvaco, American Steel, and American Painting, but did not join Carboline as a defendant. The court dismissed that action without prejudice, on August 31, 1987, for lack of jurisdiction.

On September 4, 1987, plaintiffs then filed the action, which is the subject of this appeal, in Denver District Court, alleging breach of certain contracts, misrepresentation, and negligence against Westvaco, and negligence against American Steel, American Painting, and Carboline. The court dismissed the claim against Carboline as barred by the three-year statute of limitations relating to manufacturers and sellers of products, Colo.Sess.Laws 1977, ch. 199,

§ 13–80–127.5, at 819. The court also dismissed the claims against American Steel and American Painting as being barred by the two-year statute of limitations then in effect, Colo.Sess.Laws 1979, ch. 144, § 13–80–127, at 631 (now codified with amendments at § 13–80–104, C.R.S. (1987 Repl. Vol. 6A)). In connection with that ruling, the court held that such claims did not relate back to the date that other parties asserted claims against these defendants. Furthermore, the court dismissed all claims against Westvaco, except an oral contract claim, as barred by § 13–80–127, and not revived by the remedial revival statute, § 13–80–111, C.R.S. (1987 Repl.Vol. 6A).

Upon motion of the plaintiffs, the court subsequently directed that its order be made a final judgment and stayed the remaining claim pending appeal. The ruling dismissing Carboline is not being appealed.

## I.

■ Plaintiffs first argue that their claims against Westvaco, American Steel, and American Painting are not governed by § 13–80–127 because they do not arise out of a defect in an improvement to real property. They assert that the fire was not caused by a defect, but, instead, was caused by the negligent conduct of defendants. They contend, therefore, that the claims were governed by the general six-year statute of limitations in effect at the times pertinent here and that they were brought within that statutory period.

Although the applicability of the six-year statute is raised for the first time on appeal, since *Oliver v. Homestake Enterprises, Inc.*, 800 P.2d 1331 (Colo.App.1990) (certiorari granted December 10, 1990) and *Irwin v. Elam Construction, Inc.*, 793 P.2d 609 (Colo.App.1990) were decided after this appeal was filed, we will address it here.

We conclude that § 13–80–127 applies to plaintiff's claims.

Section 13–80–127(1) provides:

"(a) All actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision,

inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall an action be brought more than ten years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

(b) A claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature.

(c) Such actions shall include any and all actions in tort, contract, indemnity, or contribution or other actions for the recovery of damages for:

(I) Any deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property; or

(II) Injury to real or personal property caused by such deficiency; or

(III) Injury to or wrongful death of a person caused by any such deficiency."

A court's primary task in statutory construction is to ascertain and give effect to the legislative purpose underlying a statutory enactment. In ascertaining the legislative purpose, we look first to the statutory language employed by the General Assembly and give words their commonly accepted and understood meaning. When the statutory language is clear and unambiguous, there is no need to resort to interpretative rules of statutory construction. *Woodsmall v. Regional Transportation District*, 800 P.2d 63 (Colo.1990). Interpretation of statutes is a question of law and appellate courts need not defer to the trial court's interpretation. *People v. Terry*, 791 P.2d 374 (Colo.1990).

By its terms, § 13–80–127 applies to all actions against certain classes of persons including contractors "performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property." Such actions include *"any and all actions* in tort, contract, indemnity, or contribution or other actions for the recovery of damages" for any *"deficiency in the design, planning, supervision, inspection, construction, or observation of construction* of any improvement to real property." (emphasis added)

The plain language of the statute supports a broad interpretation. *Mohawk Green Apartments v. Kramer*, 709 P.2d 955 (Colo.App.1985) (rejecting contention that § 13–80–110, C.R.S., applied.) Its applicability is not limited only to claims resulting from a "defect in the improvement"; it also applies to "any and all actions" that result from a "deficiency" in the design or construction process, including such a deficiency in "supervision" of those processes. Thus, to the extent, if any, that any language in *Oliver, supra,* and *Irwin, supra,* can be read to interpret the statute more restrictively, we decline to follow that language.

Hence, to determine whether this statute applies to bar any particular claim, the nature of the claim must be examined to ascertain whether it alleges misconduct arising out of an activity that the statute was designed to protect. *See Stanske v. Wazee Electric Co.*, 722 P.2d 402 (Colo. 1986).

Here, plaintiffs allege that Westvaco, acting through its subcontractors, agents, servants, and/or employees, failed to use ordinary care in the handling, use, and application of a highly flammable material. In the claims of negligence against American Steel and American Painting, plaintiffs allege that during the process of completing work on one of the two carbon storage tanks, a fire occurred. As against American Steel, the complaint alleges that American Steel was negligent in failing adequately and properly to supervise the work of its subcontractor, and as against American Painting, it alleges American Painting was negligent in, among other things, failing adequately to supervise its employees in the removal of the coatings from the various storage tanks and columns. Thus, according to plaintiff's complaint, Westvaco's

liability is predicated on the conduct of its subcontractors.

Here, there is no dispute that the liner ultimately was not acceptable and had to be removed. There is also no dispute that Westvaco subcontractors were engaged in efforts to remove the liner, that a highly flammable substance was being used for that purpose, that a fire and explosion occurred in one of the tanks where the liner was being removed, and that the tank and surrounding areas were damaged by the fire and explosion.

In *Oliver, supra,* the plaintiff alleged that her injuries were caused by the negligent operation of a sprinkler system, and in *Irwin, supra,* the plaintiff believed the damage to his home was the result of defendant's use of heavy equipment in the adjacent roadway. Thus, unlike *Oliver, supra,* and *Irwin, supra,* the resulting injury here was directly related to a deficiency in the construction of an improvement to the real property.

Therefore, we hold that § 13–80–127 does apply to plaintiff's claims against Westvaco, American Steel, and American Painting.

## II.

■ Plaintiffs next contend that, if any of its claims were subject to the two-year statute of limitations in § 30–80–127, they were timely filed pursuant to the remedial revival statute, § 13–80–111, C.R.S. (1987 Repl.Vol. 6A). We agree as to the claims filed against Westvaco, but not as to the claims filed against American Steel and American Painting.

Section 13–80–111 provides:
"(1) If an action is commenced within the period allowed by this article and is terminated because of lack of jurisdiction or improper venue, the plaintiff or, if he dies and the cause of action survives, the personal representative may *commence a new action* upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later, and the defendant

may interpose any defense, counterclaim, or setoff which might have been interposed in the original action.
(2) This section shall be applicable to all actions which are first commenced in a federal court as well as those first commenced in the courts of Colorado or of any other state." (emphasis added)

The original action in federal court was dismissed without prejudice, on June 10, 1987, because of a lack of subject matter jurisdiction. The present action was filed within 90 days of such dismissal in Denver District Court on September 4, 1987. However, the trial court held, and defendants argue, that because plaintiffs, prior to filing their claim in state court, refiled their complaint in federal court, in an action that was subsequently dismissed on August 31, 1987, they are barred from ever bringing the action again. Defendants contend the action is barred because § 13–80–111(1) states that a plaintiff may commence *"a new action"* within 90 days, and the court interpreted this to mean only *one* new action within that time. We disagree.

■ Section 13–80–111 reflects a legislative intent to enable litigants to avoid hardships which might result from strict adherence to the provisions of statutes of limitations. *Soehner v. Soehner,* 642 P.2d 27 (Colo.App.1981). Under circumstances in which plaintiffs have pursued their claims diligently, and defendants had knowledge of the claims, a liberal interpretation of the statute should be applied. *See Soehner v. Soehner, supra.*

Being mindful of the legislative intent, and interpreting the statute liberally, we conclude that "a new action" does not mean *one* new action. The statute by its terms does not specifically state that filing is limited to only one new action. The only limitation imposed is that the new action must be filed within 90 days after termination of the original action. Our conclusion is influenced by the observation that the time for filing, 90 days, is relatively brief, and by a result that allows claims to be tried on their merits.

Further, our conclusion is supported by the interpretation of similar statutes by

courts in other jurisdictions holding that, if subsequent abortive attempts to find the proper court are not prosecuted in bad faith, the number of such attempts is immaterial so long as the proper court is found before the grace period ends. *See Shircliff v. Elliott,* 384 F.2d 947 (6th Cir. 1967); *see also Technical Consultant Services, Inc. v. Lakewood Pipe, Inc.,* 861 F.2d 1357 (5th Cir.1988). *Cf. Gendek v. Jehangir,* 151 Ill.App.3d 1028, 105 Ill.Dec. 155, 503 N.E.2d 1161 (1987), *aff'd* 119 Ill.2d 338, 116 Ill.Dec. 230, 518 N.E.2d 1051 (1988) (one-year period); *United States Fire Insurance Co. v. Swyden,* 175 Okl. 475, 53 P.2d 284 (1936) (one-year period).

Here, plaintiffs commenced a new action within 90 days after termination of the original action, and the trial court erred in holding that § 13–80–111 did not apply to plaintiffs' claims that were originally filed within the statutory period.

However, because plaintiffs' claims against American Steel and American Painting were not initially filed until September 1986, more than two years after plaintiffs' claim arose, the claims against those defendants were not commenced within the period allowed by § 13–80–127, and therefore, § 13–80–111 has no applicability to those claims.

The judgment is affirmed as to plaintiffs' claims against American Steel and American Painting and is reversed as to plaintiffs' claims against Westvaco, and the cause is remanded for further proceedings in accordance with this opinion.

CRISWELL and RULAND, JJ., concur.