**HOMESTAKE ENTERPRISES, INC., Petitioner,**

v.

**Margaret P. OLIVER and Penrose Hospital of Colorado Springs, a non-profit corporation, Respondents.**

**No. 90SC355.**

Supreme Court of Colorado, En Banc.

Sept. 23, 1991.

Rehearing Denied Oct. 21, 1991.

Pryor, Carney and Johnson, Mark P. Martens, Englewood, for petitioner.

Richard H. Cairns, P.C., Richard H. Cairns, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

This is a certiorari proceeding initiated by petitioner Homestake Enterprises, Inc. (Homestake), to review the court of appeals decision in *Oliver v. Homestake Enterpris-*

*es*, 800 P.2d 1331 (Colo.App.1990). In *Oliver*, the court held that the two-year statute of limitations applicable to actions against contractors and builders, § 13–80–127, 6 C.R.S. (1984 Supp.),[1] did not apply to the negligence action brought by respondent Margaret P. Oliver. We reverse.

## I

In September 1984, Homestake entered into a construction subcontract with a general contractor not involved in this litigation to install a sprinkler system, landscape, and lay sod on property owned by Penrose Hospital of Colorado Springs.[2] On November 15, 1984, prior to the completion of the subcontract work, Oliver suffered injuries when she slipped and fell on an icy sidewalk located on the property.

In February 1988, Oliver filed a negligence action against Homestake. Her complaint initially alleged that Homestake was liable to her because the injuries resulted from the negligent testing by Homestake employees of the sprinkler system in freezing temperatures, which caused ice to form on the sidewalk.[3] Oliver's amended complaint withdrew her allegation of negligent testing and instead alleged that Homestake "negligently operated or caused the sprinkling system to be operated during freezing temperatures, which caused ice to form on the ... sidewalk where it knew, or should have known, that pedestrians such as the Plaintiff would be walking."

The trial court granted Homestake's motion for summary judgment on the ground

that Oliver failed to file her action within the two-year limitations period for actions against contractors such as Homestake, *see* § 13–80–127, 6 C.R.S. (1984 Supp.).[4] Relying on *Irwin v. Elam Construction*, 793 P.2d 609 (Colo.App.), *cert. denied*, No. 90SC171 (Colo. July 9, 1990), the court of appeals reversed the trial court's ruling, reasoning that section 13–80–127 "applied only to negligence in planning, design, construction, supervision, or inspection that results in a *defect* in an improvement to real property that, in turn, causes injury to a claimant," and Oliver had alleged only that Homestake employees were negligent and not that any of Homestake's improvements to real property were "defective." *Oliver v. Homestake Enters.*, 800 P.2d 1331, 1331–32 (Colo.App.1990). Accordingly, it concluded that the six-year statute of limitations applied rather than the two years mandated by section 13–80–127.[5] We granted certiorari to determine the scope of section 13–80–127.

## II

The issue here is whether section 13–80–127, 6 C.R.S. (1984 Supp.), applies when a plaintiff alleges that a contractor negligently operated a sprinkler system but does not allege that the contractor caused a "defect" in an improvement to real property. Section 13–80–127 provides in part:

(1)(a) All actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation

---

1. The statute, which also specifically prescribes time limits for actions against architects, builder-vendors, engineers, and inspectors, was repealed and reenacted in 1986 as § 13–80–104. *See* 1986 Colo. Sess. Laws 697.

2. Penrose Hospital joined Oliver as a plaintiff to recover workers' compensation payments it had made to Oliver following her injury.

3. The record does not establish how or why the sprinkler system was turned on, or who turned on the system. A Homestake operations manager stated in a deposition that it was possible that the sprinkler system was automatically activated because the system may have been prematurely connected to electricity.

4. In its order, dated December 29, 1988, the trial court found as an undisputed fact that at the time of the accident, November 15, 1984, the contract between Homestake and the general contractor had not been completed and the project was still under construction by Homestake as the work had not been accepted by the owner until some time after November 15, 1984.

5. The six-year statute of limitations formerly contained in § 13–80–110, 6 C.R.S. (1973), was repealed and general negligence actions are now subject to a two-year limitation period. *See* § 13–80–102, 6A C.R.S. (1987).

of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter....

(b) A claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature.

(c) Such actions shall include any and all actions in tort, contract, indemnity, or contribution or other actions for the recovery of damages for:

(I) Any deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property; or

. . . .

(III) Injury to or wrongful death of a person caused by any such deficiency.

Two divisions of the court of appeals have considered the issue presented in this case. In *Irwin v. Elam Construction*, 793 P.2d 609 (Colo.App.), *cert. denied*, No. 90SC171 (Colo. July 9, 1990), the plaintiffs brought a negligence action against a construction company alleging that physical damage to their home was the result of vibrations caused by the company's use of heavy equipment on an adjacent road. Their complaint was filed more than three years after they moved out of their damaged house. The trial court granted the construction company's motion for summary judgment on the ground that the action was barred by section 13–80–127's two-year limitation of actions against contractors. Division II of the court of appeals reversed, holding that section 13–80–127 "was intended to apply only to negligence in planning, design, construction, supervision, or inspection that results in a defect in an improvement to real property that, in turn, causes injury to a claimant." *Id.* at 611.

In *Sharp Brothers Contracting Co. v. Westvaco Corp.*, 817 P.2d 547 (Colo.App. 1991),[6] the plaintiffs contracted with the Denver Board of Water Commissioners to construct a water re-use demonstration plant. They entered into a subcontract with Westvaco to furnish and install a carbon regeneration system in a portion of the plant. Westvaco subcontracted with American Steel for the construction of two storage tanks. In turn, American Steel entered into an agreement with Carboline Company to supply a liner for the interior of the tanks. Subsequently, the water board rejected the storage-tank liners, and Westvaco contracted with another company to remove the liners. While the liners were being removed an explosion occurred, damaging the tanks and the demonstration plant. The plaintiffs brought a negligence action against Westvaco, alleging that Westvaco, acting through its subcontractors and agents, negligently handled the highly flammable material being used to remove the liners, thus causing damage to the demonstration plant. The trial court dismissed the action on the ground that it was filed beyond the two-year time limitation set forth in section 13–80–127.

Division IV of the court of appeals affirmed. The court stated that the statute's applicability "is not limited only to claims resulting from a 'defect in the improvement'; it also applies to 'any and all actions' that result from a 'deficiency' in the design or construction process, including such a deficiency in 'supervision' of those processes." The court then held that "the resulting injury here was directly related to a deficiency in the construction of an improvement to the real property." *Id.* at 551.

A

 In resolving the issue in this case we rely on well-settled rules of statutory construction. Our primary duty in construing statutes is to ascertain and effectuate

**6.** Westvaco filed a petition for certiorari to review the court of appeals decision, but the petition does not raise an issue relating to the court of appeals construction of section 13–80–127. See *Sharp Bros. Contracting Co. v. Westvaco Corp.*, 817 P.2d 547 *cert. denied* (1991).

the intent of the General Assembly. *E.g.,* *Stanske v. Wazee Elec. Co.,* 722 P.2d 402, 405 (Colo.1986). To determine the legislature's intent, we must consider the language of the statute as a whole, *id.,* and give effect to the statutory terms in accordance with their commonly accepted meaning, *Kern v. Gebhardt,* 746 P.2d 1340, 1344 (Colo.1987); *see Stanske,* 722 P.2d at 407.

We recognize that section 13–80–127's limitation of actions against builders and contractors is in derogation of common law because, under the common law prior to the enactment of statutes of limitations relating to construction, builders and contractors were subjected to potentially indefinite liability, *Leaf v. City of San Mateo,* 104 Cal.App.3d 398, 404–05, 163 Cal.Rptr. 711, 714 (1980); *see* Heller, *The District of Columbia's Architects' and Builders' Statute of Repose: Its Application and Need for Amendment,* 34 Cath.U.L.Rev. 919, 924–25 (1985); Rogers, *The Constitutionality of Alabama's Statute of Limitations for Construction Litigation: The Legislature Tries Again,* 11 Cumberland L.Rev. 1, 1–2 (1980). We also recognize that a statute in derogation of the common law "must be strictly construed to restrict its provisions to the clear intent of the legislature," *Bloomer v. Board of County Comm'rs,* 799 P.2d 942, 946 (Colo.1990) (footnote omitted).

We believe, however, that the legislature intended that section 13–80–127 provide comprehensive coverage to builders, contractors, and other construction-industry professionals.[7] In 1979, the legislature amended section 13–80–127 in response to this court's interpretation of section 13–80–127 in *Duncan v. Schuster–Graham Homes,* 194 Colo. 441, 578 P.2d 637 (1978).[8] In *Duncan,* owners of a home brought an implied warranty of habitability action against the builders, alleging that the home was structurally defective. The builders argued that the trial court erred in holding that the homeowners' action was not barred by section 13–80–127. In affirming, we held that the plain language of section 13–80–127 indicated that the General Assembly intended to limit only claims for personal injury or damage to property "other than the defective improvement itself," *Duncan* at 445, 578 P.2d at 639, and thus the statute did not bar claims for damages by a homeowner for deficiencies in the structure. We also held that the trial court erred in ruling that section 13–80–127 barred the builders' third-party indemnity claim against soil engineers.[9]

The statements of legislators and witnesses in hearings on the 1979 bill proposing the amendments to section 13–80–127 establish that the amendments were intended to abrogate *Duncan's* interpretation of section 13–80–127. For example, an attorney who participated in drafting the amendments and who testified before the Senate Judiciary Committee stated that the

---

**7.** In *Mohawk Green Apartments v. Kramer,* 709 P.2d 955, 956–57 (Colo.App.1985), the court noted:

> The statute in its expanded present form was a response to the narrow interpretation given to its predecessor by the courts. *See Tamblyn v. Mickey and Fox, Inc.,* 195 Colo. 354, 578 P.2d 641 (1978); *Duncan v. Schuster–Graham Homes, Inc.,* 194 Colo. 441, 578 P.2d 637 (1978). A statute should be construed to give effect to the intent and purposes for which it was enacted. *Firstbank of North Longmont v. Banking Board,* 648 P.2d 684 (Colo.App.1982). The plain language of the amended statute supports a broad interpretation.

**8.** The legislature added §§ 13–80–127(1)(b) and (c), and amended § 13–80–127(1)(a), as follows:

> All actions against any architect, contractor, BUILDER OR BUILDER VENDOR, engineer, or inspector PERFORMING OR FURNISHING the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter....

The legislature also amended § 13–80–127(2):

> In case ANY SUCH CAUSE OF ACTION ARISES during the NINTH OR tenth year after substantial completion of the improvement to real property, said action shall be brought within TWO YEARS after the date upon which said CAUSE OF ACTION ARISES.

**9.** We held that the builders' claim was not barred because an indemnity claim does not accrue, and the limitations period does not begin to run, until the indemnitee's liability is determined.

amendments were intended to bring section 13–80–127 "back to what we think the legislature intended in 1969 when they drafted this originally, and that was that property was an all-encompassing term including real and personal." *Hearings on S.B. 386 Before the Senate Judiciary Comm.* [*"Hearings on S.B. 386"*], 52d Gen. Assembly, 1st Sess., at 11:32 a.m. (Audio Tape Mar. 16, 1979). In explaining the amendment listing the types of "actions" covered by the statute, a senator explained:

> When it said before "all actions" now it clarifies it as not only tort, but it's also contract, indemnity, contribution, and I think that's a response to the court's prior decision that any statute in derogation of common law should be strictly construed. So, in order to make the legislative intent clear as to what types of actions are covered, if it isn't enough to say all actions, it's now outlined as to what actions are covered.

*Hearings on S.B. 386,* at 1:48 p.m. Moreover, as the court of appeals recognized in *Sharp Brothers Contracting Co.,* at 550, the inclusive language used in the statute supports a comprehensive interpretation. *See* § 13–80–127(1)(a) ("All actions against any architect, contractor, builder...."); § 13–80–127(1)(c) ("Such actions shall include any and all actions in tort, contract, indemnity, or contribution or other actions for the recovery of damages....").

We recognize also that comparable architects'-and-builders' statutes of limitations and repose, which have been enacted in more than forty states, *see* Heller, *The District of Columbia's Architects' and Builders' Statute of Repose: Its Application and Need for Amendment,* 34 Cath. U.L.Rev. 919, 920 n. 4, have been construed to provide comprehensive coverage to architects, builders, contractors, and others in the construction business. *See, e.g., Britt v. Schindler Elevator Corp.,* 637 F.Supp. 734 (D.D.C.1986); *Dighton v. Federal Pac. Elec. Co.,* 399 Mass. 687, 690–91,

506 N.E.2d 509, 512 (1987) (although statute applied to bar "any '[a]ctions of tort,'" court held that actions for contribution were also within statute's scope). The language of section 13–80–127 demonstrates the legislature's intent to provide comprehensive coverage to the specified professionals in the construction business.

■ As the court of appeals recognized in *Irwin,* section 13–80–127(1)(b) suggests that only a defect in an improvement to real property may give rise to a claim for relief limited by the statute, since it states that a claim for relief "arises" when the "damaged party discovers ... [a] defect in the improvement [to real property] which ultimately causes the injury." We believe, however, that the legislature intended that section 13–80–127(1)(c)(I) define "defect" to include a wide range of acts or events: that section states that a claim for relief limited by the statute "shall include any and all actions in tort ... for any deficiency [10] in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property." Our construction of "defect" is consistent with the legislature's intent to enact a statute of limitations to protect contractors and other professionals in the construction business from stale claims. *See Hearings on S.B. 386,* 11:17–11:54 a.m., 1:46–3:15 p.m.

**B**

To determine whether section 13–80–127 applies to bar a claim, "the nature of the claim must be examined to see whether it alleges misconduct arising out of an activity that the statute was designed to protect." *Stanske v. Wazee Elec. Co.,* 722 P.2d 402, 405 (Colo.1986). Since the application of section 13–80–127 is fact specific, we now turn our attention to the facts of this case.

Oliver does not dispute that Homestake is a contractor as contemplated by section

---

**10.** We agree with the court of appeals implicit conclusion in *Irwin* that the term "defect" in section 13–80–127 is used synonymously with "deficiency." *See Irwin,* 793 P.2d at 611; *Webster's Third New International Dictionary* 591 (1986) ("defect" is a "want or absence of something necessary for completeness, perfection, or adequacy in form or function: deficiency, weakness"); *id.* at 592 ("deficiency" is "the quality or state of being deficient: defect, inadequacy").

13-80-127(1)(a); that the sprinkler system Homestake installed was an improvement to real property; that she was injured on the job site while the contract work was in progress; and, that she did not bring her negligence action within two years after the claim for relief arose. Oliver argues, however, that the timeliness of the filing of her action should be governed by the general six-year statute of limitations provided for in section 13–80–110, because her complaint does not allege that any defect in an improvement to real property caused her injuries.

As "defect" is defined by section 13–80–127(1)(c)(I), Homestake's alleged negligence in operating the sprinkler system in freezing temperatures was within the scope of section 13–80–127, because it was a "deficiency in the design, planning, supervision, ... construction, or observation of construction" of an improvement to real property. That is, the sprinkler system contained a "defect" or "deficiency" in the sense that a sprinkler system operating during freezing temperatures and spraying onto a sidewalk used by pedestrians was defective or deficient in design, planning, construction, or observation of construction, or defective or deficient in the supervision of its operation. Thus, notwithstanding that Oliver's complaint does not specifically allege a "defect" in the sprinkler system, the trial court could properly find that the complaint in fact relied on an implicit allegation that the sprinkler system was defective, as defined in section 13–80–127(1)(c)(I), and that Oliver's negligence action to recover damages for her injuries was barred, *see* §§ 13–80–127(1)(a) and (c)(III). We agree with the trial court's conclusion that Homestake's alleged misconduct did arise out of an activity protected by the statute.

Accordingly, we reverse the judgment of the court of appeals and remand with directions to reinstate the district court's summary judgment in favor of the petitioner.

LOHR, J., specially concurs and KIRSHBAUM, J., joins in the special concurrence.

Justice LOHR specially concurring:

I join in parts I and IIB of the majority opinion and therefore join in the judgment of the court. I write separately to emphasize that section 13–80–127 is not a statute of limitations applicable to all activities of contractors, builders and others in connection with the construction of improvements to real property. Although I do not read the majority opinion to disagree with this conclusion, some uncertainty is introduced by the repeated description of the scope of "coverage" of section 13–80–127 as "comprehensive" in section IIA of the opinion. *See* maj. op. at 982, 983.

An action against a contractor who constructs any improvement to real property must be brought within two years after the claim for relief arises. § 13–80–127(1)(a), 6 C.R.S. (1984 Supp.).[1] A claim for relief arises when "the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature." § 13–80–127(1)(b). This statute of limitations applies to all types of actions for the recovery of damages for "[a]ny deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property" or "[i]njury to or wrongful death of a person caused by any such deficiency." § 13–80–127(1)(c)(I) and (III). The statutory language plainly contemplates a connection between the injury for which damages are sought and a defect in the improvement being constructed. *Cf. Stanske v. Wazee Elec. Co.,* 722 P.2d 402, 406 (Colo.1986) ("The plain terms of [section 13–80–127] require that the challenged building activity relate to an 'improvement to real property.' ").

The necessity for such a connection provided the basis for decision in *Irwin v.*

1. As the majority notes, § 13–80–127 was repealed and reenacted in 1986 and is now codified at § 13–80–104, 6A C.R.S. (1987). See maj. op. at 980 n. 1. The revisions effected by this new legislation are not before us in this case.

*Elam Construction, Inc.*, 793 P.2d 609 (Colo.App.1990). In that case, homeowners brought an action beyond the limitations period of section 13–80–127 to recover damages for structural problems allegedly caused to their home by activities of a contractor engaged in improving and widening a road on other property. The homeowners alleged that the structural problems resulted from vibrations negligently created by the contractor's heavy equipment traveling on a road adjacent to their home. The trial court granted summary judgment for the contractor based on section 13–80–127. The court of appeals reversed, stating that section 13–80–127

> was intended to apply only to negligence in planning, design, construction, supervision, or inspection that results in a defect in an improvement to real property that, in turn, causes injury to a claimant. It was intended to limit actions against building professionals only for claims of injury arising from defects in the improvement they create, rather than to supplant the applicability of the general limitation statute for all injuries caused by their negligent conduct.

*Id.* at 611.

I believe that *Irwin* was correctly decided and that a "defect in the improvement" causing the injury and resulting from a "deficiency in the design, planning, supervision, inspection, construction, or observation of construction" of the improvement is essential to trigger the running of the limitations period of section 13–80–127. In *Irwin* there was no allegation that the injury to the home resulted from a defect in the improvement that was the subject of the construction project. In the present case, in contrast, a sprinkler system that was being constructed improperly sprayed water on a sidewalk in freezing weather. As the majority holds, "the trial court could properly find that the complaint in fact relied on an implicit allegation that the sprinkler system was defective...." Maj. op. at ——. As a result, section 13–80–127 was correctly held by the trial court to bar the plaintiff's claim for slipping and falling on the icy sidewalk.

As *Irwin* and the present case illustrate, the application of section 13–80–127 necessarily is very fact specific. It cannot be doubted, however, that there is a range of activities by contractors and others engaged in pursuits leading to the construction of an improvement to real property that, while susceptible of causing injury to persons or property if negligently conducted, do not stem from a "defect in the improvement" within the meaning of section 13–80–127. I think it misleading, therefore, to describe and emphasize the scope of the statutory protections as comprehensive.

I concur in the judgment of the court.

KIRSHBAUM, J., joins in this special concurrence.