MARYLAND CASUALTY
COMPANY, Plaintiff,

v.

FORMWORK SERVICES,
INC., Defendant.

Civ. A. No. 91–K–762.

United States District Court,
D. Colorado.

Feb. 10, 1993.

Elliott R. Feldman, Cozen & O'Connor, Philadelphia, PA, James R. Florey, Jr., Gina Carter, Englewood, CO, for plaintiff.

Scott A. McGath, Montgomery, Green, Jarvis, Kolodny & Markusson, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this diversity action, Plaintiff Maryland Casualty Company seeks indemnification from Defendant Formwork Services, Inc. under a construction contract. Maryland Casualty's claim arises from damages it paid to Regina Dominguez after the death of her husband on a construction site. Formwork moves for summary judgment, asserting that Maryland Casualty may not sue on the contract because its subrogor, Ronald L. Moore Construction Company, was not a third-party beneficiary of the contract. In addition, it argues that Maryland Casualty's indemnification claim is barred by the statute of limitations. Both arguments have merit.

### I. Facts.

On November 16, 1984, James Dominguez stepped on to unsupported plywood sheathing in the newly constructed shell of the Fort Collins Holiday Inn, the sheathing collapsed, and he fell to his death. Dominguez was an employee of Formwork, a subcontractor on the project. The general contractor and owner of the project was John Q. Hammons Industries ("Hammons"). The Ronald L. Moore Construction Company ("Moore") was project man-ager. Maryland Casualty was Moore's liability insurer.

On August 22, 1985, Dominguez' widow, on behalf of herself and her children, commenced a wrongful death action in state court seeking damages from Moore ("the Dominguez action"). On April 19, 1990, the jury returned a verdict in favor of Mrs. Dominguez, awarding damages of $690,-706. She consented to a reduction of the award to $450,000 in consideration for Moore's agreement not to appeal the decision. Maryland Casualty then paid Mrs. Dominguez this reduced amount under Moore's liability policy.

On May 7, 1991, Maryland Casualty brought this action to recover the $450,000 it paid to Mrs. Dominguez on behalf of Moore. The company alleges that it is entitled to reimbursement of this amount from Formwork under an indemnity provision in Formwork's contract with Hammons ("the Subcontract"). That provision, Article 11.11.1 of the AIA Standard Form of Agreement Between Contractor and Subcontractor, states:

> To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, the Architect and the Contractor and all of their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract, . . . .

(Mem.Br.Supp.Def.'s Mot.Summ.J., Attach. B at 6 [hereinafter, Subcontract].) Maryland Casualty claims that Moore, as project manager, is a third-party beneficiary of the Subcontract and that it is entitled to reimbursement as Moore's subrogee.

Formwork now moves for summary judgment, asserting that since Moore is not the owner, architect or contractor as defined in the Subcontract, the indemnification clause is not applicable. Furthermore, Formwork contends that Maryland Casualty's indemnification claim is barred by Colo.Rev.Stat. § 13–80–104 (1987), Colorado's statute of limitations for actions

against architects, contractors and builders.

## II. *Merits.*

### A. *Moore's Status as a Third Party Beneficiary of the Subcontract.*

Formwork's first argument is that Moore, and Maryland Casualty as Moore's subrogee, are not entitled to indemnification under the Subcontract. Article 11.11.1 of the Subcontract limits indemnification to the "Owner, the Architect and the Contractor and all of their agents and employees." (Subcontract at 6.) Formwork notes that Maryland Casualty admitted in its complaint that Moore was neither the owner nor the general contractor and has never claimed that Moore was the architect or an employee. Thus, Formwork reasons, Maryland Casualty's claim must be premised on Moore's status as an agent of Hammons, the owner and general contractor. Formwork contends, however, that Maryland Casualty is collaterally estopped from asserting that Moore was Hammons' agent. That issue was conclusively resolved against Moore in the *Dominguez* action, where the jury ruled that Moore was not an agent of Hammons for the purposes of statutory immunity under Colorado's workmen's compensation law. (*See* Mem.Br.Supp.Def.'s Mot.Summ.J., Attach. O).

In response, Maryland Casualty does not focus on Formwork's argument that Moore cannot be considered Hammons' agent.[1] Instead, it seeks reimbursement under the indemnification clause by casting Moore as the "Contractor." Maryland Casualty maintains that whether Moore can be considered the "Contractor" under the Subcontract is a disputed issue of material fact. It relies on an entirely separate agreement, the agreement between Moore and Hammons establishing Moore's duties as project manager. In that agreement, Moore is referred to as the "Contractor." (*See* Pl.'s

Mem.Opp'n Def.'s Mot.Summ.J., Ex. A.) Maryland Casualty's attempt to create a genuine issue of material fact by reference to this separate agreement is unavailing.

While the intent of parties to a contract may be determined by reference to separate ancillary instruments, *see Powder Horn Constructors, Inc. v. City of Florence,* 754 P.2d 356, 365 (Colo.1988), this is not the rule when the contract itself is fully integrated and the contract term to be construed is unambiguous. *See* Restatement (Second) of Contracts § 215 (1981) ("where there is a binding agreement, either completely or partially integrated, evidence of prior or contemporaneous agreements or negotiations is not admissible to contradict the term of the writing.") Reference to a separate writing is even less appropriate where the writing has not been executed contemporaneously or where the parties to the two agreements differ. *See generally* 17A C.J.S. *Contracts* § 298 (1963); 4 Samuel Williston, *A Treatise on the Law of Contracts* § 628 (3d ed. 1961) (writings not between the same parties or not known to both of them are "irrelevant to aid in interpretation of one another"). Whether a contract is fully integrated is a determination the court must make before deciding a question of contract interpretation. Restatement, *supra,* § 209(2).

Here, the first paragraph of Subcontract defines who each party is. Hammons is shown as both the Contractor and the Owner, Hood–Rich Architects is the Architect, and Formwork Services is the Subcontractor. Moore is not identified or referenced in the text of the Subcontract or its addenda. Furthermore, the Subcontract contains an integration clause, which provides that "the Contract Documents, which constitute the entire Agreement between the Owner and the Contractor, are listed in Article 1, and the documents which are applicable to this Subcontract, except for Addenda and Modifications issued after ex-

---

1. Maryland Casualty does contend that Ronald Moore's signature on the Subcontract to establishes that Moore was Hammons' agent. I decline to revisit this issue, as it was fully and fairly litigated in the *Dominguez* action. The jury's factual determination that Moore was not Hammons' agent in the *Dominguez* action applies both in the context of statutory immunity under Colorado's workers' compensation laws and with respect to the indemnity provision here. The factual issue is the same.

ecution of the Subcontract, are enumerated [below]."[2] (Subcontract at 8.) Article 1, in turn lists as the Contract Documents

the Agreement between the Owner and the Contractor, dated as of 4/25/84, the Conditions of the Contract between the Owner Contractor (General, Supplementary and other Conditions), the drawings, the Specifications, all Addenda issued prior to and all Modifications issued after execution of the Agreement between the Owner and Contractor and agreed upon by the parties to this Subcontract."

Moore's agreement with Hammons is not the "Agreement between the Owner and the Contractor" referred to in Article 1. It is dated May 1, 1984, not April 25, 1984, and was executed only by Moore, not Hammons or Formwork.

There is no evidence that the parties intended Moore's separate and postliminary agreement with Hammons to modify the terms of the Subcontract. The Subcontract itself is a fully integrated document, and the definition of the term "Contractor" is not ambiguous. Maryland Casualty's reliance on this later, contradictory writing, not executed by either party to the Subcontract, cannot be considered as creating a "genuine" issue of material fact that Moore was the "Contractor" under the Subcontract. *See Mosier v. Maynard*, 937 F.2d 1521, 1524 (10th Cir.1991) ("affidavits or other evidence offered by the party opposing the motion must create a genuine issue for trial; summary judgment will not lie if the opponent's evidence is 'merely colorable' or anything short of 'significantly probative' on a material issue"). Nor does it indicate that the parties intended Moore to be a third-party beneficiary of the indemnification clause. "[A]n indemnity agreement will be held to benefit a particular party only when it is express in such effect and reflects the clear intent of the parties," or "where it appears by express stipulation or by fair and reasonable in-

tendment" that the party was to be included within the indemnity contract. 42 C.J.S. *Indemnity* § 11 (1991). Formwork's motion for summary judgment on this ground is granted.

## B. *Statute of Limitations.*

■ Alternatively, Formwork argues that Maryland Casualty's claim is barred by the statute of limitations. Colorado law provides a two-year statute of limitations for "all actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property." Colo.Rev.Stat. § 13–80–104(1)(a) (1987). The two-year period begins when the plaintiff "discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury." *Id.* § 13–80–104(1)(b). This statute modifies the common law rule that actions for indemnification accrue when the indemnitor actually pays the liability—not when the underlying claim for liability accrues. *See id.* § 13–80–103(1)(c); *Nelson, Haley, Patterson & Quirk, Inc. v. Garney Companies, Inc.*, 781 P.2d 153, 155 (Colo. App.1989). Under this section, the limitations period on an indemnification claim begins to run at the same time as that for the underlying claim for injury. *Nelson, Haley*, 781 P.2d at 155.

■ In this case, Maryland Casualty's indemnification claim accrued, at the latest, on August 22, 1985, the date the *Dominguez* action was commenced in state court. Maryland Casualty did not file its complaint until May 7, 1991, well outside the two-year limitations period. The company argues, however, that the above statute of limitations does not apply because James Dominguez was killed in a construction accident, not because of a defect in the build-

---

2. No additional documents applicable to the Subcontract are listed, and the section where such documents were to have been enumerated is marked "Void." (Subcontract at 8.) Like the Subcontract itself, the General Provisions of Attachment "A" to the Subcontract contain an

integration clause providing that "[t]his writing is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms of their agreement." (*Id.,* Attach. A, ¶ 26.)

ing. Therefore, it argues, the general statute of limitations for negligence applies, which does not modify the common law rule with regard to the accrual of an indemnity claim.

Maryland Casualty relies principally on the Colorado Court of Appeals' decision in *Oliver v. Homestake Enterprises, Inc.*, 800 P.2d 1331 (Colo.App.1990). In *Oliver*, the plaintiff was injured when she slipped on a sidewalk covered with ice as a result of the defendant contractor's allegedly negligent installation of a sprinkler system at a hospital. The contractor moved for summary judgment, arguing that the action was barred by the two-year statute of limitations provided under § 13–80–104.[3] The trial court agreed and dismissed the suit. The plaintiff appealed to the Colorado Court of Appeals, which reversed. Relying on its earlier decision in *Irwin v. Elam Construction, Inc.*, 793 P.2d 609 (Colo. App.1990), the court reasoned that § 13–80–104 "limits actions against a contractor arising from defects in an improvement, but it does not supplant the applicability of the general limitation statute for all injuries caused by a contractor's negligent conduct." *Oliver*, 800 P.2d at 1331. It concluded that § 13–80–104 did not apply because the plaintiff's injuries were caused by the contractor's negligent operation of the sprinkler system, and not a construction defect. *Id.* at 1331–32.

The Colorado Supreme Court reversed the ruling in *Oliver* in a decision issued on September 23, 1991, *see* 817 P.2d 979 (Colo. 1991). First, the court noted that the legislature intended § 13–80–104 to "provide comprehensive coverage to builders, contractors, and other construction-industry professionals." *Id.* at 982. It went on to reject the narrower construction the appellate court applied in *Oliver* and *Irwin:*

> As the court of appeals recognized in *Irwin*, section 13–80–127(1)(b) suggests that only a defect in an improvement to real property may give rise to a claim for relief limited by the statute, since it states that a claim for relief "arises"

when the "damaged party discovers ... [a] defect in the improvement [to real property] which ultimately causes the injury." We believe, however, that the legislature intended that section 13–80–127(1)(c)(I) define "defect" to include a wide range of acts or events: that section states that a claim for relief limited by the statute "shall include any and all actions in tort ... for any deficiency in the design planning, supervision, inspection, construction, or observation of construction of any improvement to real property." Our construction of "defect" is consistent with the legislature's intent to enact a statute of limitations to protect contractors and other professionals in the construction business from stale claims.

*Id.* 817 P.2d at 983. The court concluded that the plaintiff's injuries from the sprinkler system were, in fact, a result of a defect or deficiency in the design, planning supervision or construction of an improvement to real property. *Id.* at 984.

Applying the broad construction of § 13–80–104 mandated by the Supreme Court's decision in *Oliver*, Maryland Casualty's claim falls within its two-year proscription. James Dominguez' wrongful death, was a result of a defect in the "supervision, inspection, construction or observation of construction of [an] improvement to real property." Colo.Rev.Stat. § 13–80–104(1)(c)(I), (III). Maryland Casualty's indemnity claim, arising in 1985 when the company "in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury," *see id.* § 13–80–104(1)(b), (c), is barred.

### III. *Conclusion.*

Formwork's motion for summary judgment is granted because Moore and Maryland Casualty are not protected by the indemnity clause of the Subcontract and the statute of limitations on Maryland Casualty's indemnification claim has expired.

---

**3.** This section was formerly codified as Colo. Rev.Stat. § 13–80–127 (1984 Supp.). References in this memorandum opinion are to the current statutory citation.

JUDGMENT

PURSUANT TO and in accordance with the Memorandum Opinion and Order entered February 10, 1993, by the Honorable John L. Kane, Jr., Senior District Judge, it is

ORDERED that judgment is entered in favor of the defendant, Formwork Services, Inc., and against the plaintiff, Maryland Casualty Company, and the complaint and cause of action are dismissed. It is

FURTHER ORDERED that defendant shall have its costs upon the filing of a bill of costs within ten (10) days of the entry of judgment.